Terri Lee HALDERMAN et al., Plaintiffs,

v.

PENNHURST STATE SCHOOL AND HOSPITAL et al., Defendants,

United States of America, Plaintiff-Intervenor,

Pennsylvania Association for Retarded Citizens et al., Plaintiffs-Intervenors.

Civ. A. No. 74–1345.

United States District Court, E.D. Pennsylvania.

Nov. 22, 1982.

---

David Ferleger, Philadelphia, Pa., for Terri Lee Halderman.

Thomas M. Kittredge, Philadelphia, Pa., for Bucks, Chester and Delaware Counties.

Robert B. Hoffman, Deputy Atty. Gen., Harrisburg, Pa., for the Com. of Pa.

Thomas Gilhool, Philadelphia, Pa., for Pennsylvania Ass'n for Retarded Citizens.

Herbert B. Newberg, Philadelphia, Pa., for David Ferleger, Esq.

Pamela P. Cohen, Philadelphia, Pa., for Pennhurst Parents Ass'n.

Terissa Chaw, Civ. Rights Div., Dept. of Justice, Washington, D.C., for the U.S.

R. Stephen Barrett, Asst. County Sol., Norristown, Pa., for Montgomery County.

Marc H. Myers, Asst. City Sol., Philadelphia, Pa., for Philadelphia County.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Currently before this Court is a motion filed by defendants the Commonwealth of Pennsylvania Department of Public Welfare ("DPW") and its Secretary, the Honorable Helen O'Bannon (hereinafter "Commonwealth Defendants") to stay a hearing before the Hearing Master in this case which is scheduled for Tuesday, November 23, 1982, and to quash subpoenas compelling the attendance of certain Commonwealth defendant officials at that hearing. For the reasons hereinafter set forth, the Court will deny the motion to stay the Hearing Master's hearing and will deny the motion to quash the subpoenas as to all subpoenaed witnesses except DPW Secretary O'Bannon.

As is now well-known to the litigants, this Court, in an opinion filed December 23, 1977, made findings of fact and conclusions of law holding that defendants were violating the constitutional and statutory rights of members of the plaintiff class by failing to provide them with minimally adequate habilitation in the least restrictive environ-

ment. 446 F.Supp. 1295. As the trial record in this case reveals, all parties to this litigation admitted that the residents of Pennhurst were not receiving minimally adequate habilitation. The Court found that Pennhurst as an institution is inappropriate and inadequate to habilitate the retarded. At trial, the Commonwealth represented that it intended to close Pennhurst in the early 1980's. This it has not done.

On January 6, 1978, this Court held a hearing to determine the injunctive remedy necessary. The parties were asked to attempt to agree on the terms of the Court's Order, but no agreement was forthcoming. The Court requested that they submit separate proposed orders. On March 17, 1978, the Court issued an injunction which, among other things, required the defendants to provide the retarded residents of Pennhurst with minimally adequate habilitation in the least restrictive environment and setting forth the procedures for planning, effectuating, and monitoring those transfers.

On December 13, 1979, the Court of Appeals approved the Court's Order and its "determination that, for the retarded class members as a whole, Pennhurst cannot be an appropriate setting in which to provide habilitation." (612 F.2d 84, 114). However, in remanding to this Court, the Court of Appeals directed that an individual hearing should be held for any Pennhurst resident who contends that the living arrangements and services available at Pennhurst are more beneficial to his or her habilitation than those made available in the community.

In light of the Third Circuit's opinion, this Court established an impartial hearing procedure and appointed a Hearing Master who was directed to provide an individual hearing for any Pennhurst resident who contended that his or her habilitation at Pennhurst would be more beneficial than that proposed in the community living arrangement. (Order of April 24, 1980). Whenever a Pennhurst resident or plaintiff class member objects to being transferred to a community living arrangement, the Hearing Master conducts a hearing for such Pennhurst resident or class member for whom a community living arrangement has been prepared for the purpose of determining whether the proposed transfer will be more beneficial to his or her habilitation than would continued residence at Pennhurst. One such hearing is that of L.P., a 50-year-old retarded man who has been residing at Pennhurst.

On October 25, 1982, the Hearing Master, pursuant to this Court's Order of April 24, 1980, held a hearing to assess the merits of L.P.'s proposed transfer to the community. At that hearing, it became apparent that many issues concerning L.P.'s care and habilitation in the community were being made uncertain by a dispute between the Commonwealth defendants, Montgomery County and the County's residential and day program providers of L.P.'s care (Shiloh, Inc. and Prospectus Associates, Inc.). The dispute between the Commonwealth defendants and the providers concerns the rate of reimbursement to be paid by the Commonwealth, which funds the community placements conducted pursuant to this Court's Order to the providers who would operate L.P.'s community living arrangement. The Commonwealth defendants have approved a rate which the County and the providers claim is far too low to allow the program to continue to operate while serving L.P.'s habilitation needs.

At the hearing, the Hearing Master attempted to ascertain the factors that had created this wide divergence of opinion between the defendants and to seek at least interim resolution of the problem so that L.P. could receive the care and habilitation to which both this Court and the Third Circuit have found him entitled. However, the Hearing Master was unable to obtain sufficient information from those present at the hearing, including the representatives of the Commonwealth defendants. The Hearing Master also encountered a similar lack of information in the matters of T.M. and A.B., also members of the Pennhurst plaintiff class whose community habilitation is threatened by the Common-

wealth-County Provider dispute over the proper reimbursement rate. For this reason, the Hearing Master concluded, in a subsequent Report regarding L.P. (see Hearing Master's Report of November 12, 1982, Dkt. No. 1662) that certain Commonwealth officials "hold the key to this continuing dilemma" of reimbursement rates for small Interim Care Facilities for the Mentally Retarded (ICF/MRs) (a type of community habilitation facility) such as that planned for L.P.

The Hearing Master therefore set another hearing date of Tuesday, November 23, 1982, for further inquiry into the matter of L.P. and arranged for the subpoena of the following persons as witnesses at the aforesaid hearing: Helen B. O'Bannon, Secretary of the Department of Public Welfare; Jennifer L. Howse, DPW Deputy Secretary for Mental Retardation; Gerald Radke, DPW Deputy Secretary for Medical Assistance; and David Smith of the DPW Office of Mental Retardation. These witnesses were also required to bring with them to the hearing all correspondence, memoranda, records, or other documents or writings in their possession or control relating to establishment or approval of a medical assistance reimbursement rate for the ICF/MR facility planned for L.P. and operated by Shiloh, Inc. at 650 Keeler Road, Lansdale, Pennsylvania.

■ To compel the attendance of these witnesses and the production of the aforesaid documents at the November 23 hearing, the Hearing Master requested that the Special Master issue and serve upon the Commonwealth officials subpoenas duces tecum requiring them to be present at the commencement of the hearing and to produce the requested documents. The Special Master began to effectuate service of these subpoenas on November 18, 1982. Apparently in anticipation of the service of the subpoenas, the Commonwealth defendants filed with this Court on November 18, 1982 a motion to Stay the Hearing of November 23 and to Quash the Subpoenas.

This Court's Order of April 24, 1980, which created the Office of the Hearing Master and established procedures for the conduct of his hearings, specifically states that the Hearing Master

may require the production of evidence and rule upon the admissibility of evidence, and shall have the power to put witnesses under oath, and may examine witnesses.... Attendance of witnesses at the hearing may be procured by the issuance and service of subpoenas as provided in Rule 45 of the Federal Rules of Civil Procedure.

(Order of April 24, 1980, at 65–66). The Order creating the Hearing Master was never appealed by any party to this litigation. The subpoenas served upon the four Commonwealth officials fall squarely within the terms of this Court's mandate to the Hearing Master, as each of the four is a defendant in this case or an agent of a defendant.

The subpoenas issued also comport with the terms of Fed.R.Civ.P. 53, which provides in relevant part:

Subject to the specifications and limitations stated in [the Court's] order, the master has and shall exercise the power to regulate all proceedings in every hearing before him and to do all acts and take all measures necessary or proper for the efficient performance of his duties under the order. He may require the production before him of evidence upon all matters in the reference and has the authority to put witnesses on oath and may himself examine them and may call the parties to the action and examine them upon oath.

\* \* \* \* \* \*

The parties may procure the attendance of witnesses before the master by the issuance and service of subpoenas as provided in Rule 45. If without adequate excuse a witness fails to appear or give evidence, he may be punished as for a contempt and be subjected to the consequences, penalties, and remedies provided in Rules 37 and 45.

Therefore, the Hearing Master in this case has two adequate grounds for requir-

ing the attendance of the Commonwealth defendant officials at the November 23 hearing—their status as parties or agents of parties and the Master's power to compel the attendance of witnesses through subpoena. Although the Master may not have been required to issue subpoenas because of the party status of the witnesses, subpoenas were issued and served, however, presumably so that the four individuals would have more definite notice of the November 23 hearing and their required participation in it.

The Hearing Master's actions were thus clearly within the scope of his authority pursuant to Fed.R.Civ.P. 53 and this Court's Order of April 24, 1980. *See* C. Wright and A. Miller, 9 *Federal Practice and Procedure,* §§ 2609, 2610. The subpoenas also comport with the standards for a subpoenas duces tecum as required by Fed.R.Civ.P. 45. *See* C. Wright and A. Miller, *supra,* §§ 2452–2454. Of particular relevance in this instance is the following observation:

> A motion to quash a subpoena duces tecum will lie if the subpoena is thought to be unreasonable or oppressive.... A witness may be compelled to produce a document that he controls though he does not have possession of it.

*Id.* at § 2454, p. 425.

Professors Wright and Miller also note that

> The burden to establish that a subpoena duces tecum is unreasonable or oppressive is on the person who seeks to have it quashed. He cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of compliance.

*Id.* at § 2457, at 435. *See also Goodman v. United States,* 369 F.2d 166 (9th Cir.1966); *Westinghouse Elec. Corp. v. City of Burlington,* 351 F.2d 762 (D.C.Cir.1965). The burden is a heavy one, *Horizons Titanium Corp. v. Norton Co.,* 290 F.2d 421 (1st Cir. 1961); *Ghandi v. City of Detroit,* 74 F.R.D. 115, 124 (E.D.Mich.1977). The Commonwealth defendants have not made such a sufficient showing, particularly in light of the Hearing Master's previous and repeated efforts to obtain the required information without compelling the attendance of more highly ranked DPW officials.

However, this Court recognizes that Department heads and similarly high-ranking officials should not ordinarily be compelled to testify unless it has been established that the testimony to be elicited is necessary and relevant and unavailable from a lesser ranking officer. *See Sneaker Circus, Inc. v. Carter,* 457 F.Supp. 771, 794 n. 33 (E.D.N.Y.1978); *United States v. Northside Realty Assoc.,* 324 F.Supp. 287, 293 (N.D.Ga.1971). For that reason, the Court will at this time grant the motion to quash as to defendant DPW Secretary Helen O'Bannon. The Hearing Master will still be able to obtain testimony from Jennifer Howse, Gerald Radke and David Smith, all of the Department of Public Welfare. If their testimony and accompanying documents do not provide sufficient information to the Hearing Master, he may seek to again subpoena Secretary O'Bannon so long as he first certifies to this Court that the Secretary's testimony is necessary and relevant to the matter before him and that this information is not equally available from a lesser ranking government official. An appropriate order will be accordingly entered.

### ORDER

AND NOW, this 22nd day of November, 1982, upon consideration of the Commonwealth Defendants Motion to Stay Proceedings and to Quash Subpoenas, for the reasons set forth in this Court's Memorandum of November 22, 1982,

IT IS HEREBY ORDERED:

1. The Motion to Stay Proceedings filed by defendants Commonwealth of Pennsylvania Department of Public Welfare and the Honorable Helen O'Bannon is DENIED;

2. The Commonwealth Defendants' Motion to Quash Subpoenas is DENIED as to the subpoenas of Jennifer Howse, Gerald Radke, and David Smith, and is GRANTED as to the subpoena of the Honorable Helen O'Bannon.