**James DAVIS, III, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 71A04–8802–CR–38.

Court of Appeals of Indiana, Fourth District.

Oct. 4, 1988.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa Anne McCoy, Deputy Atty. Gen., Indianapolis, for appellee.

CONOVER, Presiding Judge.

Defendant–Appellant James Davis, III (Davis), appeals his conviction for burglary.

We affirm.

Davis presents three issues for our review. Restated, they are:

1. whether Davis had a constitutional right to compel a witness to appear and be called before the jury when he knew the witness intended to invoke his Fifth Amendment privilege against self-incrimination,

2. whether Davis was denied his constitutional rights when the trial court refused to compel a witness's presence in court for the purpose of identification and comparison, and

3. whether the trial court erred in refusing two of Davis's tendered instructions.

In the early morning hours of October 25, 1986, L.D. Carver (Carver) called police regarding a burglary taking place in his home. Carver was visiting a friend across the street and observed two people enter his apartment. Shortly thereafter, Officer Stokes arrived at Carver's apartment. As he approached, he noticed the front door

was open and heard a commotion inside. A light was on in the kitchen. He looked inside and saw two black males. Stokes immediately identified the shorter man as Donald Henderson (Henderson). The taller man, whom Stokes did not recognize, wore a black leather coat, blue shirt, blue work pants and a black baseball cap. Stokes estimated his height at 6'2" and at least a few inches taller than Henderson. Stokes called for back-up assistance.

While Stokes was awaiting the arrival of assistance, his police radio went off and both men fled. Stokes chased them for several blocks until the two men split up. Stokes eventually caught up to Henderson but lost sight of the second man. Several officers were alerted to search for the second suspect.

Subsequently, Officer Lahey (Lahey), one of the officers searching for the second suspect, saw a man crossing an alley. When he shined his spotlight on the man, the man looked directly at Lahey then ran. Lahey called for a canine unit. The police dog searched the area and found Davis hiding in a dog house. Davis not only matched the description issued for the second suspect, but both Stokes and Lahey positively identified him.

Davis told police he was walking home from his mother's house in a highly intoxicated state when he crawled into the dog house and fell asleep. However, his coat was wet though it was dry inside the dog house. Furthermore, Lahey observed no indication of intoxication.

When Carver returned home, he found the lock to his front door was broken. He further discovered his stereo had been moved and his wardrobe was standing open with the dresser drawers pulled out.

Davis was convicted by a jury of burglary, a class B felony.

Additional facts as necessary appear below.

■ Davis first asserts he was denied his constitutional right to compulsory process for obtaining witnesses when the trial court quashed his subpoena ordering Henderson to testify.[1] Henderson moved to quash the subpoena maintaining he would claim his Fifth Amendment privilege against self-incrimination if called as a witness. After a hearing on the issue, the court ordered the subpoena quashed based on Henderson's right under the Fifth Amendment and the State's inability to grant Henderson immunity.

The United States Supreme Court discussed the constitutional guarantee to compulsory process for obtaining witnesses in *Washington v. Texas* (1967), 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019. It stated:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Id.* at 19, 87 S.Ct. 1923. Under *Washington*, two inquiries must be made when the denial of such a right is alleged:

1) whether the trial court arbitrarily denied the Sixth Amendment rights of the person calling the witness, and

2) whether the witness was competent to testify and his testimony would have

---

1. Davis bases his assertion on the Sixth Amendment to the United States Constitution which states:

   In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusa-

tion; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

He also cites Article I, § 13 of the Constitution of Indiana which states, in pertinent part:

   In all criminal prosecutions, the accused shall have the right to ... have compulsory process for obtaining witnesses in his favor.

been relevant and material to the defense.

*Id.* at 23, 87 S.Ct. 1925.

Here, it is evident Davis's rights were not arbitrarily denied. The trial court conducted a hearing solely for the purpose of resolving the issue. The court heard arguments advanced by Davis, Henderson, and the State before making its decision. It is evident the trial court did not quash the subpoena on a whim. The court gave the matter careful consideration.

Additionally, Henderson's testimony would not have been material and relevant. Though Henderson's competency to testify is not questioned, his testimony would have been immaterial. The United States Supreme Court created the standard for determining the materiality of testimony when it stated:

> The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt.... This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

*United States v. Valenzuela–Bernal* (1982), 458 U.S. 858, 868, 102 S.Ct. 3440, 3447, 73 L.Ed.2d 1193. The defendant must indicate how the witness's testimony would have been both material and favorable to his defense. *Id.* at 876, 102 S.Ct. 3446.

Here, Henderson's potential testimony was neither material nor relevant. The evidence presented at trial against Davis was overwhelming. Both Officer Stokes and Officer Lahey positively identified Davis. Additionally, Davis was found only three blocks from the site of the burglary wearing the clothes originally described by Stokes. Davis's explanation of his whereabouts at the time of the burglary was replete with inconsistencies. There is no reasonable doubt regarding Davis's guilt. Furthermore, Davis fails to establish how Henderson's testimony would have influenced his defense. He intimates Henderson's presence was required for identification purposes; however, he fails to directly argue how such testimony would have materially affected his case, as required by *Valenzuela, supra.* Therefore, the trial court did not err in quashing the subpoena.

Davis maintains our resolution of this issue is controlled by *Gadacz v. State* (1981), Ind., 426 N.E.2d 376.[2] In *Gadacz,* the trial court permitted the State, over the defendant's objections, to call a witness to the stand knowing she would invoke her Fifth Amendment privilege. Our Supreme Court found no error, but stated the tactic was a "harpoon" against the defendant and was viewed with disfavor.

We are not bound by the holding in *Gadacz.* The *Gadacz* court was presented with no Sixth Amendment claim, which is the basis for this appeal. Furthermore, the facts of *Gadacz* indicate some relevancy and materiality in the witness's testimony, which is not apparent in the present case. Additionally, all other jurisdictions which have considered the issue have held neither the prosecutor nor the defendant may have a witness claim his Fifth Amendment privilege in front of the jury. *See U.S. v. Crawford* (10th Cir.1983), 707 F.2d 447; *U.S. v. Bowman* (5th Cir.1981), 636 F.2d 1003; *U.S. v. Licavoli* (9th Cir.1979), 604 F.2d 613; *U.S. v. Harris* (7th Cir.1976), 542 F.2d 1283; *U.S. v. Johnson* (1st Cir.1973), 488 F.2d 1206; *U.S. v. Beye* (9th Cir.1971), 445 F.2d 1037; *Bowles v. U.S.* (D.C.Cir. 1970), 439 F.2d 536. We believe this rule is correct, and accordingly, adopt it.

Thus, we find no error in the trial court's quashing of the subpoena.

Davis next contends he was denied his Sixth Amendment rights when the trial court refused to compel Henderson's presence in court for the purpose of identifica-

---

**2.** Both Davis and the State concede no Indiana cases have been decided on this issue. Our search of Indiana case law also failed to reveal any decision directly on point.

tion and comparison. At trial, Officer Stokes, who had previously estimated Davis's height at approximately 6′2″, testified Davis was the taller of the two men he observed in Carver's apartment. Davis then requested Henderson be subpoenaed so the jury could compare the appearance of both men and test the credibility of Stokes's identifications. After a hearing, the court quashed the subpoena. Davis now asserts Henderson's Fifth Amendment rights protect only against testimonial compulsion, not physical assessments and comparisons, thus the subpoena was improperly quashed.

■ It is well settled the privilege against self-incrimination protects only against testimonial compulsion. *Schmerber v. California* (1966), 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908; *Hutchinson v. State* (1985), Ind., 477 N.E.2d 850, 854. The Fifth Amendment does not protect against compulsion to appear in court, to stand, to walk, or to make a particular gesture. *Schmerber, supra.* The privilege is a bar against compelling communication or testimony, but not against compelling an accused to be the source of real or physical evidence. *Id.* Therefore, Henderson's appearance in court was not protected by his Fifth Amendment rights and the court erred in quashing the subpoena. However, such error was harmless.

When there is legal and competent evidence supporting the court's conclusion, a judgment will not be reversed. *Batchelor v. State* (1920), 189 Ind. 69, 701, 125 N.E. 773, 778. Even when a constitutional right is invaded, we will not reverse a verdict for harmless error. *Sparks v. State* (1942), 220 Ind. 343, 42 N.E.2d 40, 41. When a constitutional error is found, we may still affirm when the error is harmless beyond a reasonable doubt. *Hewell v. State* (1984), Ind.App., 471 N.E.2d 1235, 1239.

■ Here, Officer Stokes's testimony provides adequate support for the conviction. A conviction may be sustained on the uncorroborated testimony of a single witness. *Mullins v. State* (1987), Ind., 504 N.E.2d 570, 573. Stokes unquestionably identified Davis both upon arrest and at

trial. He testified his identification was based primarily on Davis's facial features and not merely on height or weight. Stokes was able to clearly view Davis's face because a light was on in Carver's kitchen. Also, Davis's clothing matched the description Stokes transmitted over the radio.

There was substantial competent evidence supporting the judgment. The trial court's error in quashing the subpoena was harmless.

Davis next challenges the trial court's refusal of his tendered instruction. It is well settled jury instruction is largely within the sound discretion of the trial court. *Washburn v. State* (1986), Ind., 499 N.E.2d 264, 266. We review such a decision only for an abuse of discretion. *Id.* In determining the propriety of a refusal we consider:

1. whether the tendered instruction is a correct statement of the law,

2. whether there is evidence to support the giving of the instruction, and

3. whether the substance of the tendered instruction is covered by other instructions.

*Washburn, supra,* at 266.

■ Here, Davis's instruction number two informed the jury as follows:

The admission into evidence of a statement by the defendant is not a determination of the weight to be given to that evidence. The jury may give such weight to the evidence as the jury feels it deserves under all the circumstances.

(R. 56).

The content of Davis's instruction was covered by the court's instruction number six which stated, in pertinent part:

You are the only judges of the evidence, the weight and believability, or "credibility," of the testimony′ of each of the witnesses ...

(R.31).

Both instructions refer to the weight given to evidence. Though the court's instruction does not specifically refer to statements made by the defendant, as requested

by Davis, it does discuss the weight to be given to the evidence adduced at trial, which includes testimony of the defendant. Therefore, the substance of Davis's instruction was covered by the court's instruction. Davis's tendered instruction was properly refused.

■ Davis also challenges the court's refusal of his fourth tendered instruction, which stated:

A reasonable doubt may exist or arise not only from the evidence but also from a lack of evidence relating to an essential element of the crime.

(R. 58).

The court, however, read the following instruction to the jury:

To convict the defendant the State must have proved each of the following elements:

The defendant

1. broke and entered

2. the building or structure of another that was a dwelling

3. with intent to commit a felony in it.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.

(R. 39).

Both of the instructions discuss reasonable doubt arising from a lack of evidence on the elements of burglary. Because Davis's tendered instruction was covered by the court's instruction, there was no error in the court's refusal. *Washburn, supra.*

■ Even if either of the instructions was improperly refused, the error would be harmless because the conviction was clearly sustained by the evidence. *Grossenbacher v. State* (1984), Ind., 468 N.E.2d 1056, 1059. The evidence supporting Davis's guilt clearly supported the verdict.

AFFIRMED.

MILLER and NEAL, JJ., concur.