**Willie HUNT, Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

**No. 55A01–8805–CR–147.**

Court of Appeals of Indiana,
First District.

Dec. 4, 1989.

Eugene C. Hollander, Steven R. Jacobs, Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for plaintiff-appellee.

BAKER, Judge.

## STATEMENT OF THE CASE

Defendant-appellant, Willie Hunt (Hunt), appeals his jury conviction for operating a vehicle while intoxicated, a Class D felony.[1]

We affirm.

1. IND.CODE 9–11–2–2; IND.CODE 9–11–2–3.

## STATEMENT OF THE FACTS

On August 23, 1987, Officer Daniel Riffel, a patrolman with the Martinsville Police Department, was on routine patrol when he was flagged down by a motorist. The motorist informed Officer Riffel that a brown van pulling a boat was traveling north on State Road 37 and the driver appeared to be drunk. Officer Riffel located a van matching the description and observed the van cross the center line before he activated his red lights and siren. The van failed to stop immediately and Officer Riffel noticed it weave within its own lane before stopping.

Officer Riffel, together with a backup officer, approached the van and asked Hunt to exit the vehicle. Officer Riffel immediately noticed Hunt's breath smelled strongly of alcohol, his eyes were extremely bloodshot, and his face appeared flushed. While standing outside the van, Hunt continuously swayed back and forth. In attempting to perform a field sobriety test, Hunt simultaneously moved both his left and right fingers toward his nose despite Officer Riffel's repeated requests for Hunt to use his right finger only. Officer Riffel also noticed Hunt's speech was slow, deliberate and somewhat slurred. When asked whether he had been drinking, Hunt admitted he had consumed eight to ten beers.

After Officer Riffel informed Hunt of the implied consent law, Hunt agreed to submit to a chemical intoxilyzer test. While en route to take the test, Hunt told Officer Riffel there was really no need to administer the test since they both knew he would not pass it. Upon taking the test, Hunt registered .20% blood alcohol content and was subsequently arrested for operating a vehicle while intoxicated.

Prior to his jury trial, Hunt served a subpoena on Dr. Michael A. Evans, Director of the Indiana State Department of Toxicology (Dr. Evans). On behalf of Dr. Evans, the Attorney General's office subsequently filed a motion to quash the subpoe-

na. The trial court held an evidentiary hearing where Dr. Evans testified on the State's motion. Dr. Evans explained that when he certified the satisfactory operation of the breath machines, he relied on reports prepared by trained inspectors rather than inspecting each breath machine personally. Dr. Evans also testified that he relied on the Law Enforcement Academy to conduct the training and testing of each operator rather than performing such procedures himself. Furthermore, Dr. Evans noted he did not personally keep the certification documents pertaining to either the machines or the operators. Finally, Dr. Evans testified he had no knowledge of the facts in Hunt's case.

The trial court requested briefs on the matter from the prosecutor, Hunt, and the Attorney General's office on behalf of Dr. Evans. Upon reviewing the briefs, the trial court granted the State's motion to quash Dr. Evans's subpoena. A jury subsequently convicted Hunt of operating a vehicle while intoxicated. Hunt appeals.

## ISSUE

The sole issue raised for our review is whether the trial court erred in granting the State's motion to quash Dr. Evans's subpoena.

## DISCUSSION AND DECISION

■ Hunt contends he was denied his sixth amendment right to compulsory process [2] when the trial court quashed his subpoena ordering Dr. Evans to testify. A similar claim was recently brought before this court in *Davis v. State* (1988), Ind. App., 529 N.E.2d 112. In *Davis*, the defendant claimed his compulsory process rights were violated when the trial court quashed his subpoena ordering his purported accomplice to testify. The accomplice maintained he would claim his fifth amendment right against self-incrimination if he were forced to take the witness stand. While recognizing the importance of compulsory process to the defendant's right to present a de-

fense, this court upheld the trial court's decision to quash the subpoena. Relying on the United States Supreme Court's decision in *Washington v. Texas, supra,* this court set forth the proper analysis for evaluating the trial court's decision to quash the subpoena:

(1) whether the trial court arbitrarily denied the Sixth Amendment rights of the person calling the witness, and

(2) whether the witness was competent to testify and his testimony would have been relevant and material to the defense.

*Davis, supra* at 114–15.

In the case before us, Hunt's rights were not arbitrarily denied. As in *Davis*, we find it dispositive that the trial court conducted a hearing solely for the purpose of resolving the issue. The trial court heard Dr. Evans testify as to his duties and the procedures utilized to satisfy those duties. Hunt, the State, and the Attorney General for Dr. Evans all submitted briefs on the issue to the trial court which was painstakingly thorough in examining the ramifications of the subpoena. It is evident the trial court was well advised in considering the issue and did not arbitrarily quash the subpoena.

■ Turning to the second step of the analysis, there is no dispute as to Dr. Evans's competency to testify. We must, therefore, determine whether his testimony would have been both material and relevant to Hunt's defense. To be material, the witness's testimony must be sufficient to create a reasonable doubt about a verdict which, based on the entire record, is already of questionable validity. *Id.* (citing *United States v. Valenzuela–Bernal* (1982), 458 U.S. 858, 868, 102 S.Ct. 3440, 3447, 73 L.Ed.2d 1193). In addition, because the right to compulsory process guarantees a defendant a means of obtaining witnesses in his favor, the defendant must show the witness's testimony would have been favorable to his defense. *Davis,*

**2.** The sixth amendment right to compulsory process was deemed fundamental and thus applicable to the states through the fourteenth amendment. *Washington v. Texas* (1967), 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019.

*supra; Valenzuela–Bernal, supra* at 867, 102 S.Ct. at 3446.

Hunt has failed to demonstrate Dr. Evans's testimony was material, relevant or favorable to his defense. Hunt argues that because Dr. Evans did not personally inspect the machines or train the operators, he violated the requirements of IND. CODE 9–11–4–5. This purported violation, Hunt argues, should have been placed before the jury. We disagree.

IND. CODE 9–11–4–5 provides in pertinent part:

(a) The director of the department of toxicology of the Indiana University school of medicine shall adopt rules, under IC 4–22–2, concerning:

  (1) standards and regulations for the:
    (A) selection;
    (B) training; and
    (C) certification;
  of breath test operators;

  (2) standards and regulations for the:
    (A) selection; and
    (B) certification;
  of breath test equipment and chemicals;

  (3) the certification of the proper technique for administering a breath test.

Contrary to Hunt's assertion, there is nothing in the statute requiring Dr. Evans to personally inspect the equipment or train the operators. Consequently, Dr. Evans's testimony on that point would not have contributed in any relevant way to Hunt's defense. In addition, the State was willing to concede the fact that Dr. Evans was not personally involved in the inspection and training process. As a result, Dr. Evans's testimony would not have been favorable to Hunt's defense. Finally, the evidence against Hunt overwhelmingly indicates his state of intoxication while driving his van. Hunt was driving erratically, smelled of alcohol, had bloodshot eyes and a flushed face, swayed back and forth while standing, had slurred speech, was unable to perform a field sobriety test, and admitted consuming eight to ten beers. Based on this evidence, there is nothing to indicate the validity of the jury's verdict is questionable and therefore, Dr. Evans's testimony

was not material to Hunt's defense. Accordingly, the trial court properly quashed the subpoena ordering Dr. Evans to testify.

As an additional matter, we note that Dr. Evans's position as a department head creates another requirement for Hunt. He must not only show that the expected testimony is material, relevant, and favorable to his defense, but that the information is unavailable from a lesser ranking official. *See Halderman v. Pennhurst State School and Hosp.* (E.D.Pa.1982), 559 F.Supp. 153, 157 (in quashing subpoena ordering head of State Department of Public Welfare to testify, the court noted: "Department heads and similarly high-ranking officials should not ordinarily be compelled to testify unless it has been established that the testimony to be elicited is necessary and relevant and unavailable from a lesser ranking officer").

There is no indication that the testimony sought by Hunt is unavailable from a lesser ranking official. In fact, in its brief in support of the motion to quash the subpoena, the Deputy Attorney General posited that the State was prepared to present witnesses who had actually inspected the machine used to test Hunt. Accordingly, Hunt himself could have used his compulsory process right to obtain the information from a lesser ranking official thereby making Dr. Evans's subpoena unnecessary.

Requiring Hunt to establish that the testimony is unavailable from a lesser ranking official is necessary for the efficient management of both the Department of Toxicology and of our already overcrowded trial court dockets. To require otherwise would force Dr. Evans to testify at each of the thousands of drunk driving trials held every year in this state. Such a burden would make it impossible for Dr. Evans to fulfill his other duties as director of the Department of Toxicology or to continue his fulltime professor position at Indiana University School of Medicine. We cannot set such precedent. *See United States v. Camp* (N.D.Ga.1967), 285 F.Supp. 400 (based on concerns of causing collapse of draft, court quashed subpoena ordering Director of Selective Service System to testi-

fy at trial of defendant indicted for failing to report to draft board). Upon articulating similar concerns, the trial court properly quashed Dr. Evans's subpoena.

Judgment affirmed.

RATLIFF, C.J., and CONOVER, J., concur.