DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CHEWY, INC.,** and **CHEWY PHARMACY, LLC,**
Petitioners,

v.

**COVETRUS, INC.,**
Respondent.

No. 4D2023-2967

[April 3, 2024]

Petition for writ of certiorari to the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Daniel A. Casey, Judge; L.T. Case No. CACE21-017496.

Jay B. Shapiro, Jenea M. Reed, and Ryan Thornton of Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Miami, and Matthew P. Kanny and Sylvia R. Ewald of Goodwin Procter LLP, Santa Monica, California, for petitioners.

Pravin R. Patel of Weil, Gotshal & Manges LLP, Miami, and Gregory Silbert of Weil, Gotshal & Manges LLP, New York, New York, for respondent.

CONNER, J.

The petitioner, Chewy, Inc., petitions for a writ of certiorari seeking review of an order denying its motion for protective order to prevent the deposition of its CEO.[1] The petitioner seeks to prevent the deposition of its CEO under the "apex doctrine," which is codified in Florida Rule of Civil Procedure 1.280(h). The petitioner contends the trial court misapplied the rule in permitting the CEO's deposition. We agree with the petitioner's arguments and grant the petition.

---

[1] Two petitioners, Chewy, Inc. (the "petitioner" or "Chewy"), and Chewy Pharmacy, LLC, filed the petition in this case. However, the CEO sought to be deposed is the CEO of Chewy and holds no officer position in Chewy Pharmacy, LLC. Thus, we refer to a single petitioner in our discussion, with minimal reference to Chewy Pharmacy, LLC.

*Background*

The petitioner and the respondent, Covetrus, Inc., are competitors in the online veterinary pharmacy business.

Prior to the suit filed below, the petitioner and a related entity, Chewy Pharmacy, LLC, sued the respondent in a separate suit in New York, asserting tortious interference and violations of business regulations in multiple states, including Florida, regarding the sale of pet medicines.

In the suit below, the petitioner sued respondent for corporate libel, defamation, and unfair competition. The suit is based on two emails which the respondent had sent to thousands of veterinarians and others in August 2021 discussing the New York litigation. Among other allegedly false statements, the complaint alleged that the emails had stated the petitioner:

> (i)"is engaging in a legal maneuver to" "cut" veterinarians "out of" "the relationships [veterinarians] build with pets and their owners" and to "mute [veterinarians'] voices;" (ii) "views the vet-client-pet relationship as an impediment to sales, and they want to cut out the competition;" and (iii) is engaged in efforts to "financially damage veterinary practices."

The petitioner alleged that these statements mischaracterize its business and the New York deceptive trade practices action.

The respondent answered the complaint and asserted an affirmative defense that its statements in the August 2021 emails were true.

The primary focus of the disputed issues in the Florida libel-defamation suit is the petitioner's corporate view and policy position on the veterinarian-client-pet relationship ("VCPR").

The respondent noticed the petitioner's CEO for deposition—the first deposition which it had sought in the case below. The respondent also sought document discovery concerning the CEO's January 2023 interview with CNBC, but the petitioner objected to that discovery.

The petitioner moved for a protective order pursuant to rule 1.280(h) because the respondent failed to exhaust other means of discovery before attempting to take the CEO's deposition and did not demonstrate other discovery has been inadequate. Additionally, the petitioner alleged the

respondent would be unable to show the CEO has "unique and/or personal knowledge of the issues litigated."

As grounds for the deposition, the respondent relied on a CNBC article published online in January 2023 entitled *Chewy's Push into Pet Telehealth Runs into Regulatory Hurdles, Skeptical Veterinarians.* Pertinent portions of the article are discussed below. The article quotes and paraphrases statements directly attributed to the CEO.

The respondent argued to the trial court that the petitioner's CEO told CNBC that the VCPR concept is an impediment to the petitioner's business, a proposition which is central to the respondent's truth defense. The petitioner countered that the respondent's assertions were false, and that the respondent failed to acknowledge the article stated "Chewy said it doesn't take a stance" on VCPR. Additionally, the petitioner's motion asserted that because the telehealth medicine industry is "evolving," the statements in the article eighteen months after the August 2021 emails "has, at best, questionable relevance and/or proportionality to this lawsuit."

After conducting a hearing on the motion for protective order, the trial court denied the motion after making the following findings:

> A. [The CEO] made a public statement relevant to Defendant's truth defense. In doing so, [the CEO] directly inserted himself into this dispute. Only [the CEO] knows why he made the statement at issue and what he meant by it. Thus [the CEO] has 'unique, personal knowledge of the issues being litigated.' *In re Amend. to Fla. Rule of Civ. Proc. 1.280*, 324 So. 3d 459, 463 (Fla. 2021).
>
> B. Other discovery to date has been inadequate to uncover the meaning and intent of [the CEO]'s statements.
>
> C. The considerations in Florida Rule of Civil Procedure 1.280(h) support allowing [the CEO]'s deposition to go forward, at which Defendant can ask questions allowed under the rules of discovery.[2]

---

[2] We note that Second District has commented in *Petro Welt Trading GES.M.B.H. v. Brinkman*, 336 So. 3d 881, 883 (Fla. 2d DCA 2022), that "[t]he new rule clearly anticipates certain factual findings that the trial court should make in the first instance." We note that the trial court order in this case made no findings orally or in writing that specifically address the burdens imposed on each side by rule

Additionally, the trial court granted a stay so that the petitioner could pursue certiorari review.

*Certiorari Analysis*

By adding subdivision (h) to Florida Rule of Civil Procedure 1.280, our supreme court formally adopted the apex doctrine, applying it to both private and government officers. *In re Amend. to Fla. R. of Civ. Proc. 1.280*, 324 So. 3d 459, 461 (Fla. 2021). The apex doctrine protects the operation of governmental and corporate entities by limiting the ability to depose or call as a witness the highest executives of the entity. *See id.* at 460–62. An erroneously entered order permitting the deposition of a CEO therefore satisfies the jurisdictional requirements for certiorari review. *DecisionHR USA, Inc. v. Mills*, 341 So. 3d 448, 452–57 (Fla. 2d DCA 2022) (determining that an order requiring the deposition of a CEO or government official satisfies the jurisdictional requirements for a petition for a writ of certiorari because an erroneously entered order would result in material injury for the remainder of the trial that cannot be corrected on post-judgment appeal). Thus, we proceed with determining if the trial court departed from the essential requirements of law in permitting the deposition of the petitioner's CEO.

As discussed by the Second District,

> The text of rule 1.280(h) is unambiguous, and our supreme court has provided a detailed explanation of the reasons for the rule and key aspects of its application. . . . The party resisting the deposition is burdened to persuade the court that the corporate officer is high-level and must produce an affidavit or declaration of the officer explaining that he or she "lacks unique, personal knowledge of the issues being litigated." *See* Fla. R. Civ. P. 1.280(h). If those showings are made, the "[trial] court shall issue an order preventing the deposition, unless the party seeking the deposition demonstrates that it has exhausted other discovery, that such discovery is inadequate, and that the officer has unique, personal knowledge of discoverable information." *Id.*

---

1.280(b). Both sides in this case contend the trial court "implicitly" made determinations about the burdens. We agree with the Second District that explicit findings as to the burdens will facilitate certiorari review.

4

*DecisionHR*, 341 So. 3d at 454 (emphasis added).  We agree with the Second District that once the supreme court codified the apex doctrine, the requirements of the rule became clearly established principles of law. *Id.* at 453.

*The Petitioner's Burden: Sufficiency of the CEO's Affidavit*

In moving for a protective order, the petitioner's initial burden was to persuade the trial court that the corporate officer is high level.  *See In re Amend. to Fla. R. of Civ. Proc. 1.280*, 324 So. 3d at 463.  In this case, the petitioner's CEO undisputedly meets that requirement.  Thus, we address the sufficiency of the CEO's affidavit regarding the CEO's knowledge of the issues being litigated.

Rule 1.280(h)'s text requires that the officer's affidavit or declaration must explain the officer "lacks unique, personal knowledge of the issues being litigated."  Fla. R. Civ. P. 1.280(h); *Karisma Hotels & Resorts Corp. Ltd. v. Hoffman*, 346 So. 3d 59, 59 (Fla. 4th DCA 2022).  In the opinion adopting rule 1.280(h), our supreme court said:

> We emphasize the rule's requirement that the officer "explain" that he or she lacks unique, personal knowledge of the issues being litigated.  Bald assertions of ignorance will not do.  <u>A sufficient explanation will show the relationship between the officer's position and the facts at issue in the litigation.  The point is for the court—and the other side—to be able to evaluate the facial plausibility of the officer's claimed lack of unique, personal knowledge</u>.

*In re Amend. to Fla. R. of Civ. Proc. 1.280*, 324 So. 3d at 463 (emphasis added).

The CEO stated, in a sworn declaration attached to the protective order motion, that he had reviewed the complaint in the Florida suit but did not have any "personal, unique, and/or non-repetitive knowledge" of the respondent's August 2021 e-mails.  The CEO also noted he was "neither referenced nor alluded to" in the complaint and, beyond that, did "not have any personal, unique, and/or non-repetitive knowledge of the issues being litigated in this lawsuit" or the relevant disputed facts.  He explained this was because, as CEO, he did "not possess knowledge or personal involvement in the matters at issue" superior to that of the petitioner's other employees.

To determine whether the CEO's affidavit sufficiently explains the CEO's lack of unique, personal knowledge of the issues being litigated, the trial court (and reviewing court) must examine the pleadings "because they frame the 'facts at issue in the litigation.'" *DecisionHR*, 341 So. 3d at 454 (quoting *In re Amend. to Fla. R. of Civ. Proc. 1.280*, 324 So. 3d at 463).

The libel and defamation counts revolve around the respondent's emails sent on August 10 and 31, 2021. The complaint also refers to the ongoing litigation between the two companies in New York. Specifically, the petitioner contends the respondent lied in its August 10 email regarding the New York litigation by stating that the petitioner's goal in the New York litigation was to cut veterinarians out of the relationships which they build with pets and their owners, block veterinarians from communicating with pet owners, dominate services historically provided by veterinarians, and undermine the VCPR. The respondent further asserted the petitioner views the VCPR as an impediment to sales and the petitioner wants to cut out competition. The August 10 email also contended the petitioner purposely did not add veterinarians in the New York lawsuit, and stated:

> The [New York] judgment [the petitioner] seeks would cause substantial financial harm to veterinarians and would hurt your relationship with pets and pet owners. . . . Veterinarians risk having your right to compete with [the petitioner] to prescribe medicine and provide competitive options for your own pet patients stripped away if you are not in the case.

The complaint next contended the August 31 email "double[d] down" on the August 10 lies by stating the petitioner sent a cease-and-desist letter demanding the respondent stop updating veterinarians on the New York litigation, and claiming that because the petitioner did not name veterinarians in the New York suit, "[veterinarians] do not need to be kept apprised of the proceedings, even though if their lawsuit is successful, it could have a significant impact on [veterinarian] practice and the vet-client-pet relationship." The petitioner contended the August 31 email misrepresented its statements in the cease-and-desist letter.

As mentioned above, to prove its truth defense, the respondent sought to depose the petitioner's CEO about statements which he had made in the January 2022 CNBC article. The article was published approximately three months after the suit below was filed and approximately eighteen months after the August 2021 emails.

The CNBC article states:

6

[The petitioner]'s service, called Connect With a Vet, has experienced significant growth, but it's been limited by a specific kind of regulation known as the veterinary client patient relationship, or VCPR, according to [the petitioner's CEO].

"If you look at our Connect With a Vet, it's the singular most scaled telehealth platform in the market today, only after two years, and yet, it doesn't form a meaningful portion of our business. Why? Because when you research pet health, you'll find that there's a specific term called VCPR," [the CEO] said.

He also noted that barrier is "breaking down" in the wake of the Covid pandemic and multiple states "are already doing away with VCPR."

A few paragraphs later, the article states:

When asked about the company's position on VCPR, [the petitioner] said it doesn't take a stance on the issue and declined to say whether its veterinarians would diagnose and prescribe medication if the laws are changed. Currently, [the petitioner]'s veterinarians do not diagnose conditions or prescribe medications.

Like the above paragraph, the article contains numerous references to "Chewy," but does not make clear whether the source of the statements was the petitioner's website, other corporate officials, the New York litigation, or the CEO. The article attributes only two other statements to the CEO:

[The petitioner] aims to make health care about 30% of its overall business in the coming years, according to [the CEO]. The company wouldn't say how much pet health care accounts for in its current revenue stream, but less than 5% of [the petitioner]'s customer base buys their health products from the company.

"If you notice, there has been little to no innovation in pet health over the last decade, and yet in the last three years, there's been more innovation in pet health than in the last decade or 20 years," [the CEO] said.

Having reviewed the pleadings in the suit below, we are satisfied the petitioner's CEO affidavit sufficiently explained he lacked unique, personal knowledge of the issues being litigated.

We construe the rule requirement that the CEO affidavit "explain[] that the officer lacks <u>unique</u>, <u>personal</u> knowledge of the issues being litigated" to mean the affidavit must demonstrate the officer does not have knowledge of the issues being litigated <u>that cannot be obtained from lesser officials or employees of the entity or corporate documents</u>. Fla. R. Civ. P. 1.280(h) (emphasis added). Our view of the lack of "unique, personal knowledge" requirement is consistent with the pre-rule-amendment caselaw regarding depositions of governmental agency executives. *See, e.g.*, *Miami-Dade Cnty. v. Dade Cnty. Police Benevolent Ass'n*, 103 So. 3d 236 (Fla. 3d DCA 2012) (quashing the mayor's deposition because the information sought was readily available from other sources including the mayor's statements at public hearings and "<u>the testimony of a lower-ranking official</u>" (emphasis added)); *Horne v. Sch. Bd. of Miami-Dade Cnty.*, 901 So. 2d 238, 240 (Fla. 1st DCA 2005) (adopting the rule announced by the United States District Court for the Eastern District of Pennsylvania that "[d]epartment heads and similarly high-ranking officials should not ordinarily be compelled to testify unless it has been established that the testimony to be elicited is necessary and relevant and <u>unavailable from a lesser ranking officer</u>" (emphasis added) (quoting *Halderman v. Pennhurst State Sch. & Hosp.*, 559 F. Supp. 153, 157 (E.D. Pa. 1982))); *Dep't of Agric. & Consumer Servs. v. Broward Cnty.*, 810 So. 2d 1056, 1058 (Fla. 1st DCA 2002) (holding an agency head should not be subject to deposition unless opposing parties have exhausted other discovery and can demonstrate "the agency head is uniquely able to provide relevant information which cannot be obtained from other sources").

As our supreme court has explained, "[a] sufficient explanation will show the relationship between the officer's position and the facts at issue in the litigation. The point is for the [trial] court—and the other side—to be able to evaluate <u>the facial plausibility of the officer's claimed lack of unique, personal knowledge</u>." *In re Amend. to Fla. R. of Civ. Proc. 1.280*, 324 So. 3d at 463 (emphasis added). We conclude the petitioner's CEO affidavit demonstrates the facial plausibility of his claimed lack of unique, personal knowledge that cannot be obtained from other sources.

In responding to the certiorari petition, the respondent argues the CEO affidavit in this case is the same as the affidavit which we determined was insufficient in *Karisma Hotels*. We disagree. In *Karisma Hotels*, the CEO affidavit stated <u>only</u>: "I lack unique or personal knowledge of the issues being litigated in this matter apart from the information provided in the

8

numerous depositions taken of the current and past executives/representatives of Defendant, Premier Worldwide Marketing, LLC and Defendant, Premier Guest Services, LLC." 346 So. 3d at 59. The petitioner's CEO affidavit in this case stated more to demonstrate his lack of unique, personal knowledge of the issues litigated in the suit below.

The CEO specifically stated that he reviewed the complaint in the suit below and noted that he was not mentioned or alluded to in the complaint.[3] The CEO additionally stated he did not have "personal, unique and/or non-repetitive knowledge of the August 10, 2021 and August 31, 2021 e-mail statements made by [the respondent]" or "personal, unique and/or non-repetitive knowledge of the relevant disputed facts." We note that what is in dispute in this case is the petitioner's corporate view and policy regarding VCPR and more particularly the petitioner's alleged attempt to erode VCPR by not including veterinarians in the New York litigation.

In responding to the certiorari petition, the respondent argues it does not want to depose the petitioner's CEO about the statements referenced in their August 10 and August 31 emails; instead, it wants to depose the CEO about the statements he made to CNBC concerning the VCPR and its effects on the petitioner's business because those statements are consistent with its truth defense. Additionally, the respondent argued below and in this Court that only the CEO knows what he meant by his statements in the CNBC article.

Given the disputed issues in the libel-defamation suit described above, the respondent's arguments ignore that the CEO affidavit contains an affirmative statement that he "do[es] not possess knowledge or personal involvement in the matters at issue <u>that is superior than other employees [of the petitioner]</u>." (Emphasis added). If the petitioner in fact maintains the strategic position or policy towards the VCPR as the respondent contends, it is hard to imagine that lesser corporate officers are not aware of such a strategic position or policy, or that corporate documents do not exist to confirm the position or policy.

---

[3] We note that the CEO's affidavit states he reviewed the complaint but fails to mention whether he reviewed any other pleadings. Clearly, it would have been better for the petitioner's CEO's affidavit to state he reviewed all the pleadings. However, because the complaint references the two emails, which discuss VCPR, and the respondent's truth affirmative defense focuses on the petitioner's corporate view and policy regarding VCPR, we do not view the failure to reference reviewing all the pleadings to be fatal to the petitioner's arguments in the case.

9

We further deem the CEO's declaration of a lack of knowledge that is unique or superior to other employees is sufficient based on *Affinity Labs of Texas v. Apple, Inc.*, No. C 09-4436CW, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011). In applying the apex doctrine, the *Affinity Labs* court stated: "The mere fact that [CEO Steven] Jobs made public statements, even on issues that Affinity considers relevant to its claims, are insufficient to justify his deposition. Courts have repeatedly denied apex depositions even on a showing that the executive made public statements on relevant issues." *Affinity Labs*, No. C 09-4436CW, 2011 WL 1753982, at *16 (citations omitted). *Affinity Labs* was specifically cited as authority by our supreme court in amending rule 1.280. *In re Amend. to Fla. R. of Civ. Proc. 1.280*, 324 So. 3d at 463.

Finally, we reject the respondent's additional arguments regarding the sufficiency of the CEO's affidavit asserted in response to the petitioner's certiorari petition.

For the above reasons, we conclude that the petitioner's CEO affidavit was sufficient to shift the burden to the respondent to meet the rule requirements to take the CEO's deposition, and the trial court's implied determination that the affidavit was insufficient departed from the essential requirements of law.

*The Respondent's Burden of Persuasion*

Once the person or party resisting apex testimony has met the requirement of a sufficient affidavit by the official whose testimony is sought, the party seeking the official's testimony bears the burden to persuade the trial court that it has exhausted other discovery, that such discovery is inadequate, and that the officer has unique, personal knowledge of discoverable information. Fla. R. Civ. P. 1.280(h) (emphasis added); *In re Amend. to Fla. R. of Civ. Proc. 1.280*, 324 So. 3d at 463. The rule places the ultimate burden of persuasion on the party seeking the official's testimony. *In re Amend. to Fla. R. of Civ. Proc. 1.280*, 324 So. 3d at 463 (citing *Univ. of W. Fla. Bd. of Trs. v. Habegger*, 125 So. 3d 323, 325 (Fla. 1st DCA 2013)).

We agree with the petitioner's arguments that the respondent failed to meet its burden of persuasion to justify the CEO's deposition. As the petitioner points out and the respondent does not deny, the first person whom the respondent sought to depose in this case was the petitioner's CEO. As discussed above, if the petitioner in fact maintains the strategic position or policy towards the VCPR as the respondent contends, it is hard to imagine that other corporate employees are not aware of such a strategic

10

position or policy, or that corporate documents do not exist to confirm the position or policy. The record does not reveal any attempt by the respondent to obtain discovery regarding the petitioner's corporate policy on VCPR from company officers who may have greater involvement dealing with how VCPR affects the petitioner's business interests. Thus, not only did the respondent fail to exhaust discovery before seeking to depose the CEO, it also failed, as discussed above, to sustain its burden that the CEO has <u>unique</u>, personal knowledge of discoverable information (i.e., information that cannot be obtained from other sources).

We reject the respondent's argument the CEO's deposition is necessary because the petitioner has thwarted the respondent's discovery attempts. We also reject the respondent's argument that it should be allowed to depose the CEO because its burden was to demonstrate that the CEO has "unique, personal knowledge of <u>discoverable information</u>." To apply the rule 1.280(b)(1) scope of discovery standard to a rule 1.280(h) motion for protective order would be absurd and would ignore that rule 1.280(h) establishes a three-prong burden of persuasion on the party seeking apex testimony that is in the <u>conjunctive</u>, rather than <u>disjunctive</u>. Moreover, our supreme court has made clear in adopting rule 1.280(h), "[t]he new rule . . . imposes burdens of production and persuasion that are distinct from the burdens at play in rule 1.280(c)." *In re Amend. to Fla. R. of Civ. Proc. 1.280*, 324 So. 3d at 463.

*Conclusion*

For the above reasons, we conclude the trial court departed from the essential requirements of law in determining (by implication) the petitioner's CEO affidavit was insufficient to meet the initial burden on the party opposing apex testimony under rule 1.280(h), and in determining the respondent met its burden of persuasion under rule 1.280(h). We grant the certiorari petition and quash the order below allowing the deposition of the petitioner's CEO, without prejudice for the respondent to seek to depose the CEO upon a proper showing.

*Petition granted.*

WARNER and FORST, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

11