CHARLES ELLIS BIRKLA *v.* STATE OF INDIANA.

[No. 374S73. Filed February 26, 1975.]

*Stephen C. Haas,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *G. Philip Duckwall,* Deputy Attorney General, for appellee.

HUNTER, J.—Defendant-Appellant Charles Ellis Birkla was indicted by the grand jurors of Vanderburgh County and charged with first degree murder (Count I) and first degree murder in the commission of a felony, to-wit: robbery (Count II). After trial by jury, appellant was found guilty of second degree murder under Count I and guilty as charged under Count II. Appellant was sentenced to a term of not less than fifteen years nor more than twenty-five years upon conviction of second degree murder. He was sentenced to life imprisonment upon conviction of first degree murder in the perpetration of robbery. From the overruling of his motion to correct errors, appellant brings this appeal.

The primary issue raised in this appeal is whether appellant was denied a fair trial by alleged prosecutorial misconduct in the destruction of a videotape recording. Appellant also seeks review of the admission of a photograph and the overruling of his motion for a directed verdict.

I

In the early morning hours of February 8, 1972, the Red Bird service station in Evansville was robbed. The station attendant, David L. Higgins, was killed during the robbery. Approximately one year later on February 6, 1973, an indictment was returned against defendant-appellant Birkla and Robert L. Smithhart. Prior to the return of the indictment, Smithhart was held in the Vanderburgh County jail on a preliminary charge, and Birkla was in federal custody.

On February 8, 1973, Smithhart's wife, Charlene, came to the Evansville Police Department and requested to see her husband. Smithhart was brought from the county jail and

allowed to visit his wife in a private interrogation room. Unknown to the Smithharts, their actions were being recorded by a video camera peering into the room through a two-way mirror. Simultaneously, their voices were being recorded by a speaker-type microphone placed on the table before them.

Several days later the prosecutor was informed by the Evansville Police Department that a videotape had been made. On inquiry the prosecutor discovered the tape had been made without the consent of the Smithharts and without the knowledge of Smithhart's attorney (who also represented appellant). The prosecutor immediately informed the police that the tape was inadmissible by the state. However, the prosecutor recognized his duty to view the videotape for evidence exculpatory of either accused. After viewing the videotape, the prosecutor ordered it to be erased.

In deposing Mrs. Smithhart on March 22, appellant's attorney discovered that the tape had been made. Appellant's motion to produce was granted. On May 30, the prosecutor answered that the tape had been erased by Detective Kenneth Macken, on or about February 12, 1973. Appellant's motion to dismiss, filed June 1, 1973, was overruled. After a change of venue, the motion was renewed, and again overruled.

Arguing that the state's nonproduction of the videotape would unconstitutionally impair defendant's ability to impeach the state's chief witness against him (Charlene Smithhart), defendant moved for an order to prevent the state from calling her. The motion was denied. After Charlene testified, defendant moved to strike her testimony on the same ground. The motion was also overruled. Appellant argues that the overruling of these motions requires that he be granted a new trial. We do not agree.

The function of the prosecution in our adversary system of criminal justice is to insure that justice prevails, not to procure convictions at any cost. When the prosecution exceeds the function with which it is charged, both defendant and so-

ciety are wronged. Thus, appellate courts have traditionally subjected claims of prosecutorial misconduct to intensive review.

Clearly, a state may not sustain a conviction based upon testimony known to be perjured. *Mooney* v. *Holohan,* (1935) 294 U.S. 103, 55 S. Ct. 340, 79 L. Ed 791. Nor may the prosecution stand mute while testimony known to be false is received into evidence. *Alcorta* v. *Texas,* (1957) 355 U.S. 28, 78 S. Ct. 103, 2 L. Ed 2d 9. Moreover, the latter duty does not cease merely because the false testimony goes only to the credibility of a state's witness. Thus the United States Supreme Court in *Napue* v. *Illinois,* (1959) 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217, stated:

> "The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend."

Similarly, when the prosecution relies upon the testimony of a coconspirator to obtain conviction of an accused, the coconspirator's credibility is an important issue in the case, and evidence of any understanding or agreement as to future prosecution of the coconspirator must be disclosed to the jury. *Giglio* v. *U.S.,* (1972) 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104; *De Marco* v. *U.S.,* (1974) 415 U.S. 449, 94 S. Ct. 1185, 39 L. Ed. 2d 501. While the foregoing cases describe limitations upon prosecutorial conduct at trial, the duty of the prosecutor vis-a-vis a defendant's right to fair trial commences when the citizen is charged. Thus, a suppression by the prosecution of evidence favorable to an accused upon request violates due process when the evidence is material either to guilt or punishment, irrespective of the bona fides of the prosecution. *Brady* v. *Maryland,* (1963) 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215. Prior to any request for discovery by the defendant, the negligent destruction or withholding of material evidence by the police

or the prosecution may present grounds for reversal. *Hale* v. *State*, (1967) 248 Ind. 630, 230 N.E.2d 432.

The prosecutor, however, is not yet required to disclose or produce nonmaterial evidence. Hence, the prosecutor, after a charge has been filed but before the defendant has requested discovery, may determine whether particular nonmaterial evidence should, nevertheless, be produced, retained or destroyed. If the prosecutor decides to retain evidence of questionable materiality, it is clear that his subsequent conduct at trial in exaggerating its nonproduction, may enhance the materiality and require its production. *Arline* v. *State*, (1973) 156 Ind. App. 95, 294 N.E.2d 840. In support of the present rule permitting prosecutorial discretion in the destruction of nonmaterial evidence, the state argues that a mandatory retention rule "would require the police and prosecutors to become repositories of superfluous material, obligated to preserve the fruits of absolutely every inquiry made, however meritless or fallacious they were revealed to be upon further investigation." We cannot say the interest advanced by the state is not a legitimate one. However, it is not of the same magnitude as a defendant's right to a fair trial. We therefore hold that when the prosecution determines evidence to be nonmaterial, and further decides not to advise defense counsel of such evidence prior to its destruction, a heavy burden rests upon the prosecution to demonstrate that the destruction of such evidence did not prejudice the defendant.

In determining materiality, the prosecution should consider the seriousness of the charge. The prosecution must consider whether the evidence is relevant either to the defendant's guilt or punishment. The prosecution must evaluate the potential usefulness to the defendant of the evidence, for rebuttal or impeachment of the state's case. After considering all of these factors, if the prosecutor has any doubts concerning the potential materiality of the evidence, he must retain it.

The facts in this case do not warrant retroactive application of the rule thus announced. While the duty imposed by *Brady* arises upon defendant's request for production, the sanctions imposed for breach of that duty will generally be applied at trial or post-trial. *Brady* is not applicable here for the evidence was erased prior to any request therefor by the defendant. However, the prosecution, having viewed the film, remained under a duty not to allow false testimony to come before the court uncorrected. Appellant makes no claim that the prosecution breached this duty vis-a-vis the testimony of Mrs. Smithhart. We therefore place the burden upon appellant of establishing the materiality of the evidence and the prejudice to him of its unavailability.

Appellant bases his claim of materiality upon a response in the deposition of Captain Clarence Schiff of the Evansville Police Department. Captain Schiff, who viewed a portion of the videotape prior to its destruction, recalled that Mrs. Smithhart said to her husband, "You went in the back room with Birkla." At trial, Mrs. Smithhart denied that her husband entered the back room where the murder occurred. Obviously, her statement on the videotape was a prior inconsistent statement which was relevant for impeachment purposes. It would have been admissible if Mrs. Smithhart had responded negatively to the preliminary question. In this case, however, the destruction of the videotape did not preclude appellant from using the secondary evidence available to him for impeachment of Mrs. Smithhart. Appellant's failure to do so demonstrates the lack of prejudice accruing to him from the non-availability of the tape.

Against appellant's assertion of prejudice, we also consider the prosecutor's affidavit that he "instructed the members of the Evansville Police Department to erase said tape recording since it contained no exculpatory information of any kind which would, either directly or indirectly, exonerate Robert Lee Smithhart or Charles Ellis Birkla of participating in the

alleged crimes . . . and further . . . the said tape recording did not furnish any evidence admissible by either party in the trial of this cause."

On these facts, we hold there was no error in the overruling of appellant's motion to dismiss, his motion in limine, or his motion to strike.

## II

Appellant objected to the admission of State's Exhibit Number 7 as prejudicial and immaterial. The exhibit was a photograph of decedent's shoulder, neck and head. It was introduced through the state's medical witness for the purpose of showing the points of entry of the bullets which killed the decedent. The photograph was therefore relevant. Relevant photographic evidence is admissible by the trial court unless the prejudicial aspects are excessive. Here, the photograph was introduced to assist the jury in understanding the testimony on the nature of decedent's wounds. The prejudicial aspects of the photograph, some traces of blood, were not so excessive as to require its exclusion from evidence. Exhibit Number 7 was properly admitted. *Jennings* v. *State,* (1974) 262 Ind. 476, 318 N.E.2d 358; *Jewell* v. *State,* (1974) 261 Ind. 665, 309 N.E.2d 441.

## III

Appellant contends that the trial court erred in overruling his motions for directed verdict made at the close of the state's evidence and at the close of all the evidence. Appellant appears to argue in his brief that the evidence was insufficient to support the verdict. A directed verdict is proper only where there is a total absence of evidence on an essential element of the crime. *Hubble* v. *State,* (1973) 260 Ind. 655, 299 N.E.2d 612. In reviewing sufficiency of the evidence, we consider the evidence most favorable to the state, together with all reasonable inferences

therefrom. If there is substantial evidence of probative value to sustain the jury's conclusion as to each element of the crime, the verdict will not be disturbed. *Jennings* v. *State, supra.* Thus, if the evidence is sufficient to sustain a conviction, it is clear that a directed verdict for the accused would have been improper.

The evidence most favorable to the state indicates that appellant robbed the station attendant and ordered him into the back room of the station. Later appellant stated that he would not have shot the attendant if he had kept his mouth shut. Mrs. Smithhart testified that she purchased a gun for the defendant, at his request, and with his money. Ballistics testimony affirmatively demonstrated that the bullets which killed the decedent were fired from the same type of weapon. There was sufficient evidence from which the jury could find appellant guilty beyond a reasonable doubt. There was no error in overruling appellant's motions for a directed verdict.

For all the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

Givan, C.J., Arterburn and Prentice, JJ., concur; DeBruler, J., dissents with opinion.

### DISSENTING OPINION

DeBruler, J.—I do not agree with the implicit conclusion reached in the majority opinion that the destruction of the tape and any error of the trial court in permitting Mrs. Smithhart to testify are rendered harmless by reason of the fact that defense counsel did not choose to introduce two statements which the police officers remembered had been made by Mrs. Smithhart during the taped conversation which would have been helpful to the defendant's case. This argument ignores the balance of the destroyed tape. Even if those statements had been used to impeach Mrs. Smithhart, we would

still be faced, as we are here, with the suppression of the balance of the destroyed tape. The prejudice to the defense from the unavailability of the destroyed portion of the tape as well as its materiality is self-evident. Mrs. Smithhart was the sole witness of the State who connected appellant with the commission of the crime. This video-tape was taken of a conversation of Mrs. Smithhart and her ex-husband two days after he had been arrested as a co-defendant in the robbery-killing. This indictment had been procured upon her testimony. She had perjured herself before the Grand Jury on a prior occasion, falsely denying any knowledge of the case. She came to see him for one or both of two reasons. She either wanted to get information, to give information, or both. If she was there out of affection for her ex-husband, that would be useful to the defense. If she was acting as an agent of the police and attempting to get him to make incriminating statements, that would be useful. If she sought to justify her having given the necessary testimony to the Grand Jury, that would be useful. It is self-evident to me that that conversation would have covered many matters which would have been useful to a man such as appellant, deemed innocent of the crime by law, and having to defend himself against criminal charges.

On the basis of our holding in *Hale* v. *State,* (1967) 248 Ind. 630, 230 N.E.2d 432, and *Taylor* v. *State,* (1973) 260 Ind. 264, 295 N.E.2d 600, I would reverse and grant a new trial with instructions to order all testimony of the witness, Mrs. Smithhart, suppressed.

NOTE.—Reported at 323 N.E.2d 645.