Dorothy Marie WORTHINGTON, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 478S57.

Supreme Court of Indiana.

June 13, 1980.

Donald P. Levinson and Steve Lustina, Merrillville, for appellant.

Theo. L. Sendak, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was charged with and convicted, in a trial by jury, of second degree murder in connection with the bathtub drowning death of her seven year old adopted daughter, Susan. Accordingly, she was sentenced to life imprisonment. Her direct appeal presents the following issues:

(1) Whether the adverse publicity was such that the defendant was denied her constitutional right to an impartial jury.

(2) Whether the trial court erred in allowing a trial prosecutor to testify.

(3) Whether the trial court erred in allowing the State to introduce evidence of prior acts of child abuse committed by defendant against the victim.

(4) Whether the trial court erred in denying defendant's motion to suppress the testimony of an informant, Sheila Steele.

\* \* \* \* \* \*

ISSUE I

Defendant contends that she was denied a trial by an impartial jury, and more specifically, that the trial court erred in denying her motions for change of venue from the county, based upon adverse pre-trial publicity. She argues that the circumstances in her case are similar to those present in *Irvin v. Dowd*, (1961) 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751. We do not agree.

In *Irvin, id.*, the Supreme Court of the United States reversed the conviction of the petitioner, Irvin, upon the grounds that he had been denied due process of law under the Fourteenth Amendment, for lack of an impartial jury. That Court carefully examined the adverse pre-trial publicity preceding Irvin's trial and the record of the voir dire examination and concluded that the

" 'pattern of deep and bitter prejudice' shown to be present throughout the community" was clearly reflected by those jurors seated in the jury box. "Eight of the 12 thought petitioner was guilty." *Id.* at 727, 81 S.Ct. at 1645, 6 L.Ed.2d at 759.

We find, however, that the facts of the *Irvin* case contrast sharply with those present in the case at bar. In the *Irvin* case, the publicity against him, had been so intense that it became obvious during the jury selection process that the adverse publicity had created "a pattern of deep and bitter prejudice" against him. *Id.* at 727, 81 S.Ct. at 1645, 6 L.Ed.2d at 758. Irvin produced 46 exhibits of adverse pretrial publicity; Defendant, in this case, produced only four. Irvin's case had been the "cause celebre" of the community, so much so that there was almost a constant barrage of press releases against him during the six or seven months preceding his trial. In the case at bar, defense counsel remarked during voir dire that, in regard to the pre-trial publicity in this case, that it had lasted "Week, week and a half, little said about it except for isolated articles." In the *Irvin* case, the trial court excused 268 persons for cause upon a showing that they had a fixed opinion as to his guilt. In the case at bar, only 3 persons were similarly excused for cause. In the *Irvin* case, 90% of the prospective jurors stated that they had an opinion as to the guilt or innocence of Irvin. In the case at bar, only six of the 35 prospective jurors had an opinion as to Defendant's guilt. Three stated that they had a fixed opinion, and they were excused for cause. Several more prospective jurors who expressed doubts as to their ability to ignore press accounts of the case were peremptorily challenged. Of the 12 jurors and two alternates ultimately chosen in this case, ten of the jurors and both alternates stated categorically that they had no opinion in regard to Defendant's guilt or innocence and that they would base their verdict upon the evidence adduced at trial only. One juror, Scheller, expressed some concern as to her ability to ignore what she had read in the newspaper, but stated that she

believed that she could give Defendant a fair trial. Another juror, Marner, stated that she had an opinion as to the Defendant's guilt, but that she could ignore what she had read about the case, and would reach her verdict solely upon the evidence adduced at trial. She further stated that she could give the Defendant a fair trial. We see no error in denying the challenges as to these two jurors. The record of this voir dire proceeding, in its entirety, does not reflect the "pattern of deep and bitter prejudice" present in the *Irvin* case, nor does it reflect that the jurors seated in this cause were predisposed to rendering a guilty verdict.

Nor has Defendant demonstrated that her trial was conducted in the "Roman holiday" atmosphere which characterized the Sam Sheppard case. *See, Sheppard v. Maxwell*, (1966) 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600. There has been no showing that the jury was exposed to prejudicial publicity or community pressure during Defendant's trial.

▉ Defendant also complains that the trial court refused to sequester the jury, issue a "gag" order, or question the jurors on a daily basis regarding the ongoing publicity. Her reliance on *Lindsey v. State*, (1973) 260 Ind. 351, 295 N.E.2d 819 is misplaced. In that case, a newspaper article, alleging facts never adduced at trial, was published at the end of the State's case in chief during an overnight recess. The trial court acknowledged that the Defendant would be entitled to a mistrial if any juror had read the article, but did not ascertain whether any juror knew of the article until after the trial was completed and the jury had rendered its verdict. Examination of that jury revealed that eight of the jurors had some awareness of the contents of the article. In reversing Defendant's conviction, we held that the trial court erred in failing to take remedial action at the proper time to correct the potential prejudice created by the article. *Id.* at 356, 295 N.E.2d at 822. In the case at bar, however, the record reflects that the trial court did carefully instruct the jurors at the trial's inception that they were not to talk about the case with others, that they were not to read or listen to press accounts of the case, and that they were to report to the court if anybody approached them about the case. At the trial's conclusion, the trial judge questioned the jury to determine if any violations of his instructions had occurred and none were reported. Absent a basis for believing that the jury may have been subjected to improper out-of-court stimuli, there is no need to employ the procedure outlined in *Lindsey*.

We find no showing of any occurrence that would have "triggered" the *Lindsey* procedure.

## ISSUE II

One of the key prosecution witnesses was Sheila Steele. She testified that, during the month of August, 1977, she had been locked inside the Porter County Jail for protective custody. Sheila had turned State's witness in a case unconnected with the one before us and had been admitted for her personal safety, after having been threatened by parties in the other case. She testified that the Defendant had been placed in her cell, and that she had initiated a conversation in which she confessed to having drowned the child and spoke of the incident in detail. On cross-examination, defense counsel attempted to impeach Sheila's credibility by showing that she would receive favorable consideration in her case as a reward for cooperating with the prosecution in the instant case. Defense counsel submitted a letter detailing the terms of the plea bargain agreement between Sheila and the Prosecutor's Office, which letter had been written about the time that Sheila had first testified against Defendant by pre-trial deposition. Sheila responded that the plea bargain agreement had had nothing to do with her testimony in this case. The State then attempted to rehabilitate its witness by having Mary Rudasics, one of the two prosecutors who was trying the case, testify that there had been no connection between the plea bargain agreement with Sheila and her testimony in the instant

case. Defendant's objection to the deputy prosecutor's testimony was overruled.

■ Defendant contends that the trial court erred in allowing the trial prosecutor to "inject" herself into the case which she was trying. Defense counsel argues that it was extremely prejudicial to his client to allow a deputy prosecuting attorney to inject her personal belief as to the credibility of one of the State's witnesses. Although the dual role of lawyer-witness should be avoided out of consideration of several rules of professional responsibility, a lawyer in a case is not thereby rendered incompetent as a witness. The case before us is similar to *Butler v. State*, (1951) 229 Ind. 241, 97 N.E.2d 492. The trial prosecutor was not testifying regarding an issue of the case— rather she was only responding to a challenge to the integrity of a State's witness and to that of the trial prosecutors, as well, injected by the defense. The State was not required to permit the inference raised by the defense to stand unanswered, and it could be answered only by the parties to the bargain—one of whom was the prosecutor-witness.

■ We believe that there was no impropriety in the trial prosecutor testifying under these circumstances and no abuse of discretion on the part of the trial judge in permitting the dual role.

Defendant contends that "the error in allowing the prosecuting attorney to testify" was further "compounded" during the closing argument of deputy prosecutor, William Suarez, wherein he stated:

" * * * We have people like Sheila, whose been in trouble, whose worked out some deal. That's the type of person sitting over in County Jail, not priests or nuns or ministers or little old widows, people like Sheila, and it's interesting to find out that they talk to each other. They spill their guts out to each other and that's what happened when Dorothy came into the jail. She spilled her guts out to Sheila. *I believe Sheila. I believe she's telling—*

"Mr. Lavinson [defense counsel]: Objection to what Mr. Suarez believes, Your Honor.

"The Court: Objection overruled."

(Our emphasis)

Defendant contends that it was inappropriate for the deputy prosecutor to express his personal belief in the credibility of Sheila Steele's testimony.

■ The deputy prosecutor's remarks were improper to the extent that they intimated personal knowledge and opinion as to the credibility of the witness, Sheila Steele. *See Code of Professional Responsibility*, DR 7–106(C)(4) and EC 7–24. However, in context, we do not believe that they were violative of the substantial rights of Defendant or that they contributed to the conviction.

Defendant relies upon *Strickland v. State*, (1977) 265 Ind. 664, 359 N.E.2d 244, wherein we stated that a prosecutor should not express a "personal opinion as to the guilt of the accused or intimate that his belief of a certain witness is based upon personal knowledge of facts not before the jury." His argument should be restricted to matters of record. In the case at hand, however, it does not appear that the deputy prosecutor was intimating that his belief in Sheila's testimony was based upon any knowledge of facts not before the jury. The jury heard her testimony, and other testimony as to her credibility, and it was free to draw its own conclusions. We perceive no error here. *See generally, Morris v. State*, (1980) 398 N.E.2d 1284; *Swope v. State*, (1975) 263 Ind. 148, 325 N.E.2d 193.

## ISSUE III

Defendant was charged with having murdered her child by drowning. In furtherance of its case, the State called upon numerous witnesses to testify, over Defendant's objections, about prior acts of child abuse by Defendant against the child.

■ Defendant recognizes that this Court held in *Corbin v. State*, (1968) 250 Ind. 147, 234 N.E.2d 261 and *Martin v. State*, (1978) Ind., 372 N.E.2d 181, that prior acts of child abuse were admissible to show

intent or motive in cases in which defendants were charged with having murdered their infant children. She contends, however, that those cases are distinguishable because the victims there died from various blows to the body; whereas, in the instant case, death was by drowning. We perceive this to be a distinction without significance. Evidence of the prior acts of child abuse were admissible because they reflected the Defendant's animosity for the victim and her propensity for violent treatment of her.

## ISSUE IV

Defendant's final contention is that the trial court erred in refusing to exclude the testimony of the informant, Sheila Steele, for the reason that she had failed to advise the Defendant of her constitutional rights prior to their conversation.

■ This contention is without merit. We are not here concerned with an interrogation. Rather, the record reflects that, after Defendant was placed in the same cell with Sheila, it was the Defendant—not Sheila—who initiated the conversation. Sheila did not solicit information from the Defendant; it was a case of an inmate confiding in a fellow inmate. Indeed, it was Sheila who terminated the conversation, because she could not stand to listen further to the sordid story. Moreover, the record does not support the Defendant's contention that Sheila was acting in the capacity of an agent for the State. Rather, all the evidence was that Sheila's involvement in this case was incidental and that her testimony against the Defendant was voluntary and unconnected with the plea bargain agreement. That Sheila entered into a plea bargain agreement in an unconnected case does not, standing alone, make her an agent for the State. Accordingly, as a private citizen, she was not required to give Defendant her *Miranda* warnings before their conversation. *Leaver v. State*, (1968) 250 Ind. 523, 237 N.E.2d 368.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and HUNTER and PIVARNIK, JJ., concur.

DeBRULER, J., dissents with opinion.

DeBRULER, Justice, dissenting.

The trial prosecutor blatantly told the jury that he personally believed that the prosecution witness Steele was telling the truth. According to the ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution and the Defense Functions, The Prosecution Functions § 5.8 at 126 (1971):

> "It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant."

This is the appropriate standard to be applied in gauging the prosecutor's action. I would hold in this case that the trial court committed error in overruling the defense objection to the prosecutor's personal belief in assessing the credibility of Steele. No court can possibly tolerate attempts by a trial lawyer to give weight and credibility to his witnesses through the expression of such personal opinions.

The prosecutor is a specialist in the criminal law and his office is considered a prestigious one entitled to the respect and cooperation of all. As a result, statements of his personal belief in the credibility of prosecution witnesses are undoubtedly persuasive to the jury and can easily spell the difference between conviction and acquittal. Such statements are an invasion of the fact-finding role of the jury. In this case Steele was a key witness who testified that appellant made an admission of guilt to her while the two were confined together in a jail cell. The majority describes her as a key witness as indeed she was. If the jury had not believed Steele's testimony, the probability that it would have found her guilty would have been drastically reduced. There was misconduct here on the part of the prosecutor which placed appellant in a position of grave peril to which she should not have been subjected. *Maldonado v. State*, (1976) 265 Ind. 492, 355 N.E.2d 843.

This verdict is tainted by the misconduct of the prosecutor and the explicit sanction of that misconduct by the trial court when it ruled on the objection. To refuse to grant a new trial in this appeal is to sanction the prosecutor's misconduct, a result which I find totally at odds with our duty to maintain the fairness of criminal trials.