**Marvin Curtis FERGUSON,**
**Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 10A01–9502–CR–37.

Court of Appeals of Indiana.

Sept. 17, 1996.

Transfer Denied Nov. 20, 1996.

---

Vicki L. Carmichael, Jeffersonville, for Appellant.

Pamela Carter, Attorney General, Lisa M. Paunicka, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

ROBERTSON, Judge.

Marvin Curtis Ferguson appeals his convictions, after a jury trial, of Murder and Conspiracy to Commit Murder for which he received an aggregate sentence of forty years. Ferguson raises three issues, but because one requires reversal, we address it only. Restated it is:

whether Ferguson's right to compulsory process guaranteed by the United States and Indiana constitutions was violated, resulting in the denial of fundamental due process, by the trial court's granting of the State's motion to quash Ferguson's subpoena to obtain the deputy prosecutor's testimony with respect to any understanding he had with State's witness, Caroline Kimble, an uncharged, co-conspirator, who testified that she had not entered into any agreement with the State in exchange for her testimony against Ferguson.

## FACTS

The facts in the light most favorable to the verdict reveal that in 1993, when Ferguson was sixteen years-old, Debra Poland, enlisted the aid of Ferguson, and that of his friend, Jason Brown, to murder Poland's former lover, Kimberly Lindsey [Victim] in exchange for the life insurance proceeds from the policy that Poland held on Victim's life. At the Clarksville, Indiana home of another friend, Caroline Kimble, Ferguson, Brown, Poland, and Kimble discussed various methods of murdering Victim, including the relative merits of staging an automobile accident or strangulation. Ferguson, Brown, and Kimble held another planning meeting where the possibility of drugging Victim was discussed.

On November 20, 1993, Ferguson, Brown, Poland, and a fifth co-conspirator, Valerie Stanley, gathered to set out on the "hunt" for Victim. Kimble had driven down to Louisville to pick Ferguson up so that he could go on the hunt. Kimble provided Brown with surgical gloves to wear during the murder.

Then, four conspirators (all but Kimble) drove to a bar to meet Victim. Poland and Brown went in to talk and drink with Victim while Ferguson and Stanley waited outside in the car. After drinking at the bar for several hours, Victim and Poland drove to a motel and got a room. Ferguson, Brown, and Stanley followed Poland and Victim in another car. While Victim was in the shower, Ferguson and Brown entered the motel room. When Victim came out of the shower, Ferguson and Brown attacked her and strangled her to death. Stanley attempted to wipe all fingerprints off the contents of the room.

After the murder, the four conspirators directly involved in the murder (all but Kimble) left the motel and met Kimble at her house. There, Kimble administered a sedative to Poland to calm her down. The conspirators then discussed how to cover-up their crime and escape detection and/or apprehension. Kimble took and destroyed the distinctive, mauve, silk shirt that Brown had been wearing. Kimble and Brown flew to St. Louis, where they met Poland and Stanley, who had driven to St. Louis in Kimble's car. Kimble had provided Poland and Stanley with money for the trip. Kimble gave Brown $400.00 to take a bus to Florida and gave him the name of a friend there with whom he could stay. Kimble provided Poland and Stanley with an additional $800.00 with which to make their escape.

At trial, all four of Ferguson's co-conspirators testified against him. Three of these witnesses (all but Kimble) had been charged with crimes and testified that they had made deals with the prosecution for leniency in exchange for their testimony. Kimble, however, was not charged for her involvement. She testified that the deputy prosecutor in charge of the case, Thom Marshall, had informed her that she had no criminal liability for her part, and thus, there was no need to enter into an agreement for her testimony against Ferguson. According to Kimble, Marshall, had assured her that, if at some time in the future it would appear that she might be charged, Marshall would then advise her to obtain counsel; and, at that point, they would enter into an agreement granting

Kimble immunity from prosecution in exchange for her testimony against Ferguson.

Ferguson requested discovery with respect to all agreements entered into between the State and its witnesses. Ultimately, the trial court granted Ferguson an order compelling the State to provide that discovery. The prosecution repeatedly denied that Kimble had been granted leniency in exchange for her testimony. Moreover, the prosecution did not disclose the contingent arrangement about which Kimble testified—that if it would appear in the future that she might face charges, then, the State would offer her immunity from prosecution in exchange for her testimony. On April 18, 1994 (long before the September jury trial), Ferguson subpoenaed the deputy prosecutor, Marshall, to testify for the defense with respect to any deals or understanding the State had with Kimble to obtain her testimony. Ferguson alleged a compelling, legitimate need to call Marshall to obtain this evidence which could not be obtained otherwise. The trial court granted the State's motion to quash the subpoena and entered a protective order prohibiting the defense from calling Marshall as a witness.

Additional facts are supplied as necessary.

## DECISION

Ferguson alleges prosecutorial misconduct in that the evidence indicates that the prosecutor, in fact, had an understanding with Kimble granting her leniency in exchange for her testimony. Ferguson argues the prosecutor's failure to disclose this understanding requires reversal. Ferguson also argues his right of compulsory process was violated by the trial court's quashing of his subpoena to obtain the deputy prosecutor's testimony on the subject. Without deciding whether Ferguson has established prosecutorial misconduct, we hold that the confluence of these

concerns requires that we reverse and remand for retrial.

■ The credibility of a felon-witness is highly suspect. *Lewis v. State*, 629 N.E.2d 934, 937 (Ind.Ct.App.1994). The truth-seeking process requires that evidence related to any consideration a felon-witness receives in exchange for testifying on behalf of the State be made available to the defense because any such deal or understanding further undermines the credibility of the felon-witness. *Id.* The jury's estimation of the truthfulness and reliability of a witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend. *Id.* at 937–38. Thus, when the prosecution relies on the testimony of a felon-witness, evidence of *any understanding* as to consideration the witness receives for testifying must be disclosed to the jury. *Giglio v. United States*, (1972), 405 U.S. 150, 155, 92 S.Ct. 763, 766, 31 L.Ed.2d 104; *Birkla v. State*, 263 Ind. 37, 323 N.E.2d 645, 648 (1975), *cert. denied*, 423 U.S. 853, 96 S.Ct. 99, 46 L.Ed.2d 77.[1]

■ Prosecutorial misconduct with respect to the State's failure to disclose any understanding or agreement it has entered into to procure the testimony of a witness constitutes a violation of the defendant's right to the due process of law as guaranteed under the Fourteenth Amendment of the United State Constitution. *Lewis*, 629 N.E.2d at 937. Accordingly, claims of prosecutorial misconduct in this area invoke the highest level of appellate scrutiny. *Id.* When a prosecutor permits a witness, who has an undisclosed understanding or agreement with the State for her testimony, to testify falsely that she has no such understanding or agreement, the defendant's conviction must be set aside if there is any reasonable likelihood that the testimony of

1. In *Lewis*, 629 N.E.2d at 938 n. 6, we noted that our supreme court had held in *Lopez v. State*, 527 N.E.2d 1119, 1128–29 (Ind.1988), that the State need disclose only express, confirmed agreements for testimony. We pointed out that this holding did not provide the constitutional protection required by the United States Supreme Court which has held that *any understanding* regarding consideration for testimony must be

disclosed. *Giglio*, 405 U.S. at 155, 92 S.Ct. at 766. Again, we reiterate the fine argument made by the *Lewis* defendant to the effect that courts must not sanction the ability of the State to circumvent the defendant's due process rights through the use of tacit "wink-and-nod" type agreements to avoid the disclosure of agreements or understandings for testimony. 629 N.E.2d at 938 n. 6.

that witness could have affected the judgment of the jury. *Id.*

▪ Moreover, the right of a criminal defendant to compulsory process for obtaining witnesses in his behalf is guaranteed by both the federal and Indiana constitutions. U.S. Const. amend. VI; Ind. Const. art. 1 § 13; *Klagiss v. State*, 585 N.E.2d 674, 681 (Ind.Ct.App.1992), *trans. denied, cert. denied*, 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33. In *Washington v. Texas* (1967), 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019, the court stated:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

388 U.S. at 19, 87 S.Ct. at 1923. Under *Washington*, two inquiries are to be made when the defendant asserts that his right to compulsory process has been unconstitutionally limited:

1) whether the trial court arbitrarily denied the Sixth Amendment rights of the person calling the witness, and

2) whether the witness was competent to testify and his testimony would have been relevant and material to the defense.

388 U.S. at 23, 87 S.Ct. at 1925. The defendant must indicate how the witness' testimony would have been both material and favorable to his defense. *Davis v. State*, 529 N.E.2d 112, 115 (Ind.Ct.App.1988). In evaluating whether reversal is warranted:

> the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence

of relatively minor importance might be sufficient to create a reasonable doubt.

529 N.E.2d at 115 (Quoting *United States v. Valenzuela–Bernal* (1982), 458 U.S. 858, 868, 102 S.Ct. 3440, 3447, 73 L.Ed.2d 1193).

▪ Ordinarily, counsel is not subject to being called as a witness. *Matheney v. State*, 583 N.E.2d 1202, 1206 (Ind.1992), *cert. denied*, 504 U.S. 962, 112 S.Ct. 2320, 119 L.Ed.2d 238. There are exceptions, however, such as when counsel is believed to have material information that cannot be disclosed otherwise. *Id.* Where the evidence is easily available from other sources and absent extraordinary circumstances or compelling reasons, an attorney who participates in a case should not be called as a witness. *Id.* Generally, a prosecuting attorney cannot be called as a defense witness unless the testimony sought is required by a compelling and legitimate need. *Id.* If the prosecutor does not have information vital to the case, the trial court may appropriately exercise its discretion in denying the defendant's request to examine the prosecuting attorney. *Id.*

▪ In situations where a prosecuting attorney is the only witness available to testify regarding whether a State's witness' testimony was procured by agreement, the testimony of the prosecuting attorney is essential to get at the truth. *See Worthington v. State*, 273 Ind. 499, 405 N.E.2d 913, 916–17 (1980), *cert. denied*, 451 U.S. 915, 101 S.Ct. 1991, 68 L.Ed.2d 306. In *Worthington*, the State was permitted to rehabilitate one of its witnesses with the testimony of the prosecuting attorney to the effect that there had been no connection between the witness' plea bargain and her testimony in the case. 405 N.E.2d at 916. The *Worthington* court held:

> The trial prosecutor was not testifying regarding an issue of the case—rather she was only responding to a challenge to the integrity of a State's witness and to that of the trial prosecutors, as well, injected by the defense. The State was not required to permit the inference raised by the defense to stand unanswered, and it could be answered only by the parties to the bar-

gain—one of whom was the prosecutor-witness.

*Id.* at 917.

■ In the present case, the quantity and quality of the circumstantial evidence in support of Ferguson's assertion that the State and Kimble had an understanding that she would not be prosecuted were she to cooperate and testify against Ferguson is most compelling. Any contention that there was an insufficient basis to prosecute Kimble, who was an adult, for her participation in the conspiracy is specious. In fact, although Kimble was not physically present during the actual murder, her participation in the conspiracy was much more active and involved than was Ferguson's. As noted above, Kimble was involved in the planning of the murder; she had picked up Ferguson in Louisville so that he could go on the hunt; she destroyed material evidence; and she provided her co-conspirators with transportation and money to make their escape. On the other hand, the overt act in furtherance of the conspiracy charged against Ferguson, who was a juvenile at the time of the murder, was that he merely traveled to the motel to meet his co-conspirators where the murder took place.

Kimble, an adult, could have easily been subjected to criminal prosecution had the prosecutor chosen to exercise discretion to do so. In fact, the statute of limitations on the crime has not yet run and, considering the wealth of evidence against Kimble, the citizens of Indiana have a reasonable expectation that Kimble will be prosecuted if, in fact, there was no understanding that she would receive consideration for her testimony against Ferguson. It simply strains credulity that Kimble would so freely incriminate herself under oath without an understanding that she would not face criminal charges.

Based on the above, Ferguson established a compelling, legitimate need to obtain the testimony of the deputy prosecutor to examine him regarding his understanding, if any, about the procurement of Kimble's testimony. Obviously, the deputy prosecutor's testimony is the only source from which this evidence may be obtained. The verdict of guilty against Ferguson is of questionable validity as it rests upon the testimony of felon-witnesses, one of whom was permitted to testify as a "clean" witness—that is, that her testimony was not the product of any deal or understanding, despite the evidence of her extensive involvement in the conspiracy.

Accordingly, we hold that the trial court abused its discretion in quashing Ferguson's subpoena to obtain the deputy prosecutor's testimony which, in turn, violated Ferguson's right to compulsory process resulting in the denial of due process of law. Therefore, we must reverse Ferguson's conviction and remand for a new trial.

Judgment reversed.

NAJAM, J., and SHARPNACK, C.J., concur.