John C. SIGLER, Appellant–Plaintiff,

v.

STATE of Indiana, Appellee–Defendant.

No. 61A04–9802–PC–61.

Court of Appeals of Indiana.

Oct. 22, 1998.

Susan K. Carpenter, Public Defender, John T. Ribble, Deputy Public Defender, Indianapolis, for Appellant–Plaintiff.·

Jeffrey A. Modisett, Attorney General, Kent D. Zepick, Deputy Attorney General, Indianapolis, for Appellee–Defendant.

## OPINION

GARRARD, Judge.

John Sigler (Sigler) appeals from the denial of his petition for post-conviction relief. He claims the State failed to inform him of offers of consideration to and agreements with the State's chief witness against him and failed to correct false trial testimony by that witness, violating his right to due process.

We affirm.

In 1985, Sigler was convicted of Murder and Conspiracy to Commit Murder. He previously appealed his conviction, which was reported in *Siglar v. State,* 541 N.E.2d 944 (Ind.1989). For the sake of clarity, we restate the facts relevant to his petition for post-conviction relief as follows: In late July or early August 1983, Loretta Stonebraker (Loretta) offered to pay Helen Williams (Williams) to kill Loretta's husband, Leon Marion "Red" Stonebraker (Red). Williams refused. In early February 1984, Loretta asked Williams to reconsider and offered to pay Williams and Sigler $2,500 to kill Red. Later that month, Loretta increased her offer to $3,000. On February 13, 1984, Williams and Sigler told Loretta they would kill Red. Loretta set up the scheme to kill Red by asking Red to go steal a hog and suggesting he take Williams and Sigler along to help. Sigler, Williams and Red drove around looking for hogs. When they stopped at a barn, Sigler and Red exited the car. Sigler, who was carrying a gun, told Williams to leave for a while. When she returned fifteen to twenty minutes later, Sigler got back in the car and told her "it was over." (Record at 712).[1] Red was later found near the barn dead of a gunshot wound to the head.

Other witnesses at Sigler's trial testified that Sigler told them he killed Red. Sigler claimed all of the witnesses who gave testimony linking him to Red's death were either lying or mistaken.

Loretta's trial commenced February 7, 1985 and Sigler's trial commenced on March 20[2] In Loretta's case, the State on January 25, 1985 had filed a Supplemental Response to Defendant's Motion for Production, which stated: "[t]he State would also answer in response to the defendant's motion to divulge any agreements entered into with the State's witness Helen Williams, that the State has offered Helen Williams, through her attorney, a fixed term of twenty-five (25) years, in

---

1. We shall refer to the trial record as "Record" and the post-conviction record as "P.C. Record."

2. Loretta was also convicted of murder.

return for her cooperation in this matter." P.C.Record 134. At some point prior to her trial, the State passed a note to Williams' attorney, which read: "[The sheriff] talked to Helen at my request: she—1) won't require written plea; 2) does not require *fixed* time prior to testifying; 3) is willing to "TRUST" US. How about it?" P.C.Record 147. (Emphasis in original.)

On March 11th, Sigler's attorney filed a Motion to Reveal Agreements Entered into Between the State and Prosecution Witnesses, which requested "[a]ny and all consideration or promises of consideration given or offered to prospective State witnesses including ... Helen L. Williams...." Record 150. According to the affidavit of Sigler's counsel, executed in 1997, the State responded by advising him that: a) Williams had agreed to testify against Sigler; b) Williams intended to plead guilty to Conspiracy to Commit Murder, a class A felony, after Sigler's trial; and c) Williams had no agreement with the State regarding her sentence and, consequently, was at some risk of receiving the maximum penalty for the crime if the court found sufficient aggravating circumstances. (P.C.Record 137–38). Sigler's attorney stated that he did not know that the State had made an offer of twenty-five years to Williams, or that a written note had been exchanged between the State and Williams' attorney.

At the post-conviction relief hearing, the prosecutor testified that although an offer for a fixed term had been made to Williams, she did not respond to that before Sigler's trial. P.C.Record 162, 163, 168–69, 171. He also testified that he had no memory of the note, although he recognized it as being in his handwriting, and Williams had cooperated with the State all along and trusted that they "wouldn't run her out on a rail no matter what happened." Williams' attorney testified that "there was never specified the amount of time that she would receive. We had obviously discussed many various periods of time but there had never been any agreement or any promise by the Prosecutor as to what we would receive." P.C.Record 156. He also testified that had a specific length of sentence been offered to his client before Si-

gler's trial, he would have wanted a signed document to that effect. P.C.Record 157.

In its Findings of Fact and Conclusions of Law, the post-conviction court found that the handwritten note which the State gave to Williams' attorney did not mention a length of time, and that although an offer had been discussed, no express agreement was reached. The court also found that even if the offer should have been revealed to petitioner's attorney, it was harmless error because of the "sufficient and overwhelming" evidence to support the conviction. Record 95.

*Standard of Review*

■ To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the trial court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind.1993).

*1. Failure to Disclose Information*

■ Sigler argues the prosecutor's failure to inform him of offers of consideration to and agreements with Williams violated his right to due process. The function of the prosecution in our adversary system of criminal justice is to ensure that justice prevails, not to procure convictions at any cost. *Lewis v. State*, 629 N.E.2d 934, 937 (Ind.Ct.App. 1994). When the prosecution exceeds the function with which it is charged, both the defendant and society are wronged. *Id.* Thus, appellate courts have traditionally subjected claims of prosecutorial misconduct to intensive review. *Id.*

■ It is within a prosecutor's scope of authority to make promises and offers of immunity, leniency, money or other benefit to a State's witness to induce cooperation. *Schmanski v. State*, 466 N.E.2d 14, 15 (Ind. 1984). However, these practices place a burden upon the prosecution because they tend to impair the credibility of witnesses or to show interest, bias or motives as a witness. *Id.*

■ Our supreme court has previously acknowledged the importance of fully disclos-

ing express plea agreements or understandings between the State and witnesses, even in cases where those agreements are not reduced to writing. *Wright v. State,* 690 N.E.2d 1098, 1113 (Ind.1997). An express agreement exists where there is a confirmed promise of lenience in exchange for that witness' testimony. On the other hand, preliminary discussions need not be disclosed nor is disclosure required where in fact the witness hopes for leniency but the State neither confirms nor denies that hope to the witness. *Id.*

■ We cannot state that the evidence as a whole "leads unerringly and unmistakably" to the conclusion there was an express agreement between the State and Williams. *Weatherford,* 619 N.E.2d at 917. It appears that an offer for a fixed term had been made by the State in January and that there were discussions between the State and Williams, or her counsel, or between Williams and her counsel, with respect to the length of time Williams would serve. It is certainly plausible on the state of the record that by the time of Sigler's discovery request and trial no agreement actually existed that was subject to the requirements for disclosure. Especially since Williams' attorney did not confirm that there had been any agreement for a fixed time made prior to Sigler's trial, we cannot say the evidence leads unmistakably to a conclusion opposite that reached by the trial court. Accordingly, no reversible error has been shown.

### 2. Failure to Correct False Testimony

Sigler also claims the prosecution engaged in misconduct by failing to correct testimony by Williams which the prosecutor knew was false. At Sigler's trial, Williams testified as follows:

[Defense Counsel] Q: You haven't made any kind of a plea bargain agreement with the Prosecutor's Office, is that correct?

[Williams] A: I have not signed nothing, no.

Q: They made any offers to you at all?

A: No. The only thing I know is what me and my lawyer talked about.

Q: How about the statement that was made to you by one of the police officers stating to you that if you cooperated, things would go easy for you? Remember that?

A: No, I don't. . . .

Q: Did your lawyer say anything to you about the fact that there are lesser offenses that you could plead guilty to if the Prosecutor would allow you to. In other words, you don't have to necessarily plead guilty or be found guilty of what you're charged with.

A: I don't think we've ever talked about anything like that.

Q: Have you ever talked about years, time?

A: We just talked about—me and my lawyer just talked about 25 but that's all the farther it's got.

Q: Well, I thought you said that no offers have been made to you by the Prosecutor's office.

A: I said me and my lawyer's talked about that. Not the Prosecutor.

Q: Well, are you saying your lawyer told you that the Prosecutor suggested that number of years?

A: No.

Q: He just brought that up as [sic] number that he thought might be fair for you?

A: Me and him talked about it.

Q: He never told you that the Prosecutor might have suggested that though?

A: Prosecutor's never promised me that.

Q: Well, did he tell you the Prosecutor suggested that might be a fair number of years for you?

A: No, that was me and him talking that way.

Q: It was just you and your lawyer talking, right?

A: Uh huh.

Q: Your lawyer's never brought to you an offer that's been made by the Prosecutor's office, is that correct?

A: Nope.

[Prosecutor]: He's asked her that 4 or 5 times and she's said no.

Q: Judge, it's difficult to understand what's [sic] she's saying because she doesn't directly answer the question.

[Defense counsel then moves to a different subject.]

(T.R. 602–04).

■ Prosecutorial use of perjured testimony or testimony known to be false invokes the highest level of appellate scrutiny. *Lewis v. State*, 629 N.E.2d 934, 937 (Ind.Ct.App. 1994). The prosecution may not stand mute while testimony known to be false is received into evidence. *Id.* False evidence, when it appears, must not go uncorrected. *Giglio v. United States*, 405 U.S. 150, 155, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

■ Initially, we are constrained to note that Williams' nonresponsive answers to counsel's cross examination, which counsel permitted to stand, further confuse the record as to what precisely occurred prior to Sigler's trial. We are troubled, of course, by the disclosure of the offer of a twenty-five year sentence in the discovery responses in Loretta's case and no mention of such offer in this case. Yet, except for the possible explanation that this offer was no longer meaningful because it had not been accepted, no reason has been advanced why the prosecutor was willing to disclose the offer in one case but not the other. Furthermore, nowhere in the record does it appear that the prosecutor ever communicated that or any other offer of leniency directly to Williams. In other words, as confusing as her quoted testimony may be, it may also be quite true. Certainly, it would have been admirable and the better practice, if the prosecutor had set the record straight for the court and jury as to the status of any plea discussions concerning Williams. We cannot say, however, on the record before us, that the witness was committing perjury and this was known to the prosecution. It follows that Sigler has failed to establish that the evidence leads unerringly and unmistakably to the conclusion that the State denied him due process through the knowing use of perjured testimony.

Affirmed.

SHARPNACK, J., concurs.

MATTINGLY, J., dissents and files separate opinion.

MATTINGLY, Judge, dissenting.

I respectfully dissent.

The majority focuses on whether an express agreement existed between the State and its chief witness, Helen Williams, who was charged with the same offense as Sigler. It is true that, under Indiana law, the duty of a prosecutor to disclose such express agreements with State's witnesses exists only when there is a confirmed promise of leniency in exchange for that testimony. *Wright v. State*, 690 N.E.2d 1098, 1113 (Ind.1997). Thus, preliminary discussions and offers made to a felon-witness are not subject to *mandatory* disclosure by the prosecutor.

In this instance, Sigler's counsel requested during discovery "[a]ny and all consideration or promises of consideration given or offered to prospective State witnesses including ... Helen L. Williams...." P.C.R. 150. Even though the prosecution had previously disclosed to Loretta Stonebraker that an offer of a fixed term of twenty-five (25) years had been made, the prosecution did not divulge this information to Sigler.[3] In essence, the prosecution withheld from Sigler virtually all evidence of its discussions with and offers to Williams, even though that information was specifically requested and the prosecutor was aware an offer had been made to Williams.

Just because disclosure of offers made to felon-witnesses is not mandatory under Indiana law does not mean a prosecutor should not be required to disclose such information when it is requested. The prosecution has the duty under the due process clause to insure that criminal trials are fair by disclosing evidence favorable to the defendant on request. *United States v. Bouye,*

---

3. The prosecution's response to Sigler was only that Williams had agreed to testify against Sigler; that Williams intended to plead guilty to Conspiracy to Commit Murder, a Class A felony, after Sigler's trial; and that Williams had no agreement with the State regarding her sentence and thus was at some risk of receiving the maximum penalty for the crime. P.C.R. 137–38.

688 F.2d 471, 473 (7th Cir.1982). Suppression by the prosecution of evidence favorable to an accused violates due process rights where evidence has been requested by the accused and is material either to guilt or punishment—irrespective of the prosecutor's good faith or bad faith. *Boyd v. State*, 650 N.E.2d 745, 749 (Ind.Ct.App.1995), *trans. denied.*

The information which Sigler sought was clearly material to the jury's determination of his guilt, as information about Williams' possible motives in testifying related directly to her credibility. The jury's estimation of the truthfulness and reliability of a witness may well be determinative of guilt or innocence; it is upon such subtle factors as the possible interest of a witness in testifying that a defendant's life or liberty may depend. *Ferguson v. State*, 670 N.E.2d 371, 374 (Ind. Ct.App.1996), *trans. denied.* In this case, I believe the prosecutor violated·Sigler's due process rights by suppressing evidence which could have caused a jury to find Williams less credible than it did without that evidence.

I am also troubled by the requirement of an "express agreement" before disclosure of information pertaining to State's witnesses is mandatory. This seems to require that there be both an offer of a fixed term sentence and an acceptance before disclosure becomes mandatory. Unfortunately, this gives prosecutors an opportunity to circumvent the due process rights of the criminally accused by discussing possible leniency with State's witnesses but delaying the final arrangements for plea bargains or refusing to make final express agreements with felon-witnesses until after those witnesses testify. This court has previously noted the problems inherent in requiring an express agreement before prosecutors must disclose evidence pertaining to felon-witnesses. *See Lewis v. State,* 629 N.E.2d 934, 938 n. 6 (Ind.Ct.App.1994).

A jury should have before it all the relevant circumstances that cause or induce a felon-witness to testify, including the rewards for such testimony. *Newman v. State,* 263 Ind. 569, 573–74, 334 N.E.2d 684, 687 (1975). When the prosecution relies upon the testimony of a co-conspirator to obtain the conviction of the accused, the co-conspirator's cred-

ibility is an important issue in the case and evidence of any understanding or agreement as to future prosecution of the co-conspirator must be disclosed to the jury. *Birkla v. State,* 263 Ind. 37, 42, 323 N.E.2d 645, 648 (1975). Prosecutorial misconduct with respect to the State's failure to disclose any understanding or agreement it has entered into to procure testimony of a witness constitutes violation of a defendant's due process rights as guaranteed under the federal constitution. *Ferguson,* 670 N.E.2d at 374. I believe these cases strongly suggest that, in order to fully protect the due process rights of the criminally accused, evidence of *any understanding* should be disclosed, not just express agreements.

Finally, it is clear to me that the prosecutor did err in this case. Williams testified that the prosecutors had not made her any offers at all. This simply was not, and is not, true. The prosecutor testified during the hearing on Sigler's petition for post-conviction relief that an offer had been made to Williams. This fact alone gave the prosecutor the duty to correct Williams' testimony. Instead, he sat mute and allowed testimony which could have given the jury the incorrect impression that Williams had no motive to testify.

When reviewing a claim of prosecutorial misconduct, we must determine whether there was misconduct by the prosecutor and whether that misconduct had a probable persuasive effect on the jury's decision; the degree of impropriety of the conduct is irrelevant. *See Cox v. State,* 696 N.E.2d 853, 859 (Ind. 1998) (noting "grave peril" is not required to sustain a finding of prosecutorial misconduct). Williams was the chief witness for the State. Her credibility was of the utmost importance in the case against Sigler. By failing to correct Williams' false testimony that the State had not made her any offers, the prosecutor's misconduct had a probable persuasive effect on the jury's decision, violating Sigler's right to due process.

It is important to note that requiring the State to fully disclose all information relevant to felon-witnesses should not prejudice the State in any way. Full disclosure merely protects the due process rights of the crimi-

nally accused by ensuring that juries have all available information about State's witnesses and by allowing them to make decisions on the credibility of State's witnesses based on that information. I would reverse Sigler's conviction and remand for a new trial.

